[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 365.]

OFFICE OF DISCIPLINARY COUNSEL *v*. CROWLEY.

[Cite as *Disciplinary Counsel v. Crowley*, 1996-Ohio-391.]

*Attorneys at law—Misconduct—Two-year suspension with one year stayed on condition—Dishonesty towards clients—Misconduct prejudicial to the administration of justice—Misconduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Prejudice or damage to a client—Failure to assist and cooperate in disciplinary investigation— Late registration as an attorney while continuing to engage in the practice of law.*

(No. 96-918—Submitted June 25, 1996—Decided August 21, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-71.

_____

{¶ 1} In a four-count complaint filed on August 7, 1995, relator, Office of Disciplinary Counsel, charged respondent, Michaelle T. Crowley of Bowling Green, Ohio, Attorney Registration No. 0006066, with violations of DR 1-102(A)(4) (misconduct involving dishonesty, fraud, deceit, or misrepresentation); 1-102(A)(5) (misconduct prejudicial to the administration of justice); 1-102(A)(6) (misconduct adversely reflecting on fitness to practice law); 6-101(A)(3) (neglect of an entrusted legal matter); 7-101(A)(3) (prejudice or damage to a client); Gov.Bar R. V(4)(G) (failure to assist and cooperate in disciplinary investigation); and Gov.Bar R. VI(1) (late registration as an attorney). In her answer, respondent admitted some facts alleged in the complaint, denied others, and added explanations.

{¶ 2} On January 25, 1996, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") held a hearing on the

matter. The complaint, answer, stipulations, and evidence established that respondent was admitted to the Ohio Bar in 1982. From 1982 until 1988, she served both as an assistant city prosecutor and as Bowling Green's Chief City Prosecutor. Since 1988, she has been in the private practice of law in Bowling Green.

{¶ 3} As to Count One, Lawrence and Deanna Appelhans, the parents of LaDeana Appelhans, retained respondent in April 1990 to represent LaDeana in connection with a charge of driving under the influence of alcohol (DUI) arising from a single-car accident in which LaDeana was injured. In the fall of 1990, after the DUI charge was resolved, respondent also agreed to represent the Appelhans family in pursuing a medical malpractice claim against the Wood County Hospital for alleged misdiagnosis of LaDeana's injuries.

{¶ 4} Thereafter, respondent repeatedly told the Appelhans family that the malpractice claim against the hospital was progressing but would take time to resolve. In fact, respondent never filed a lawsuit or sent a letter of representation to the hospital concerning this malpractice claim. At times, respondent told the Appelhans family that she had received hospital settlement offers from three thousand to twelve thousand dollars, but respondent advised that these offers were unsatisfactory. In fact, the hospital had made no settlement offers. Respondent told the Appelhans family that court hearings had been scheduled, and respondent had them prepare for telephone conferences and meetings with judges. Later, respondent represented to the Appelhans family that these meetings and conferences had been postponed. On one occasion, respondent had the Appelhans family visit her office to assist in preparing a response to interrogatories from opposing counsel. Respondent took notes and advised she would prepare the responses. In fact, no interrogatories had been received.

{¶ 5} On March 16, 1995, respondent told Mrs. Appelhans that the malpractice claim had no merit and should be dropped. After Mrs. Appelhans asked

2

to see a copy of the filed complaint, respondent admitted she had never filed the lawsuit and recommended the family consult other counsel.

{¶ 6} As to Count Two, respondent undertook in September 1990, to represent the Reverend Stacey Swalley, a missionary, to pursue his claim for reparations as a crime victim. See R.C. 2743.51 *et. seq.* Reverend Swalley had been robbed, assaulted, and injured in May 1990, and had incurred medical and dental expenses less than $400 as a result. Respondent failed to file the claim by May 1992, the deadline for that claim specified in R.C. 2743.56(C)(2). As a result of respondent's failure, Swalley lost any opportunity for reimbursement of these expenses. In October 1992, relator sent two certified letters of inquiry to respondent concerning Swalley's complaint, but respondent did not reply.

{¶ 7} As to Count III, the city of Rossford appointed respondent in the summer of 1993 as a special prosecutor to investigate a citizen's complaint of criminal damage to property. After her investigation, respondent determined that criminal prosecution was inappropriate, and that any issues should be resolved in civil litigation. However, respondent failed to notify the city or the complaining witnesses of her determination, and failed to return phone calls from a complaining witness as to the status of the matter. In January and February 1994, relator sent two certified letters of inquiry to respondent about this matter, but respondent did not respond to these inquiries.

{¶ 8} As to Count IV, respondent registered as an attorney for the 1991/1993 biennium in February 1992, five months late. Although respondent was not registered during this five-month period, she engaged in the practice of law.

{¶ 9} The panel found that respondent's conduct violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 6-101(A)(3), 7-101(A)(3), Gov Bar R. V(4)(G) and VI(1).

{¶ 10} In mitigation, three witnesses testified on respondent's behalf as character witnesses, and respondent presented other mitigating evidence. In March

1991, respondent's mother died; in 1993, she and her husband separated and dissolved their marriage; and in 1994, she suffered from a ruptured disc requiring surgery and the extended wearing of a cervical collar brace. Further, she suffered from serious depression and underwent counseling and treatment.

{¶ 11} In addition, respondent enjoyed an outstanding reputation as a conscientious and trusted city prosecutor. When she left office, she practiced in domestic relations, real estate, and criminal law, but she had virtually no personal injury practice. Respondent possessed a strong work ethic, had exceptional legal abilities, and was regarded as honest and highly professional.

{¶ 12} Respondent testified that $15,000 had been transferred to LaDeana Appelhans's new attorney to settle LaDeana's claim against respondent. Respondent had also given her attorney $400 in trust for Reverend Swalley, whose present whereabouts are unknown. The board noted by way of mitigation that respondent readily admitted her misconduct and offered no excuse. Respondent understood that a period of suspension was required, had stopped taking new clients, and was in the process of winding down her practice at the time of the panel's hearing.

{¶ 13} Relator recommended an indefinite suspension, and counsel for respondent recommended a six-month suspension. The panel recommended a two-year suspension, with one year stayed on condition that respondent continue treatment for her depression and provide proof of that treatment or a medical statement that treatment was no longer necessary. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

———————————

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator.

*Mark H. Aultman*, for respondent.

———————————

***Per Curiam.***

{¶ 14} Having reviewed the record, we concur in the board's findings and its recommendation. Respondent engaged in a course of dishonesty toward her clients, the Appelhans family, beginning with neglect and a lie, and continuing with lengthy inaction and elaborate deception to cover the lie, that we find particularly distasteful and damaging to the legal profession. See, *e.g.*, *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 658 N.E.2d 237; *Toledo Bar Assn. v. Dzienny* (1995), 72 Ohio St.3d 173, 648 N.E. 2d 499.

{¶ 15} Therefore, we find it necessary to suspend respondent from the practice of law. "Dishonesty toward a client, whose interests are the attorney's duty to protect, is reprehensible." *Lake Cty. Bar Assn. v. Speros* (1995), 73 Ohio St.3d 101, 104, 652 N.E. 2d 681, 683. In view of respondent's mitigating evidence, we concur in the board's recommendation of a limited suspension. Accordingly, we hereby suspend respondent from the practice of law in Ohio for two years, with one year of that suspension stayed on the condition that respondent continue treatment during this two-year period for her depression and provide proof of that treatment or a medical statement that treatment is no longer necessary. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIER and STRATTON, JJ., concur.

COOK, J., dissents.

RESNICK, J., not participating.

———————————

**COOK, J., dissenting.**

{¶ 16} I would indefinitely suspend the respondent as recommended by relator.

———————————