**[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 381.]**

COLUMBUS BAR ASSOCIATION *v*. FLANAGAN.

[Cite as *Columbus Bar Assn. v. Flanagan*, 1997-Ohio-61.]

*Attorneys at law—Misconduct—Public reprimand—Engaging in conduct adversely reflecting on fitness to practice law—Neglecting an entrusted legal matter.*

(No. 96-1992—Submitted October 16, 1996—Decided February 5, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-89.

————————————

{¶ 1} On December 4, 1995, the Columbus Bar Association ("relator") filed a complaint charging Mark M. Flanagan of Westerville, Ohio, Attorney Registration No. 0030607 ("respondent"), with violations of the Disciplinary Rules in connection with respondent's representation of Richard and Roline Smith in a Chapter 13 case filed in the United States Bankruptcy Court. Relator also charged that respondent regularly failed to deposit fees in an established IOLTA account (interest on lawyer's trust account) in violation of DR 9-102 (failure to deposit client funds in a bank account that contains no funds belonging to the lawyer). Respondent's answer denied any violation of the Disciplinary Rules.

{¶ 2} According to the testimony and stipulation before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"), the Smiths, responding to a Yellow Pages advertisement arrived at respondent's office on February 22, 1994 for the purpose of filing a bankruptcy. Anita Dorsey, an employee of respondent who had neither experience as a legal assistant nor education as a paralegal, met with the Smiths at the initial interview and explained the difference between Chapter 7 and Chapter 13 bankruptcies. The Smiths decided to file under Chapter 13. Dorsey prepared the petition, the Chapter 13 plan, and

the other necessary forms. Respondent did not meet with the Smiths at the initial interview or at the later interview when the Smiths signed the forms and paid an initial $200 retainer and $160 filing fee. Respondent did not maintain an IOLTA account at the time, and the entire $360 was deposited in respondent's general account. Dorsey signed respondent's name to the pleadings and then filed them with the bankruptcy court. Respondent did not review the documents before they were filed.

{¶ 3} Respondent failed to appear at the scheduled meeting of creditors, known as the "341 meeting," conducted by the bankruptcy trustee on April 6, 1994. At the trustee's request, respondent's office was called and attorney Tim Dearfield, a tenant in respondent's office condominium, appeared in order to represent the Smiths.

{¶ 4} Although he was paid $650 in additional fees under the Chapter 13 plan, respondent did not timely file appropriate amendments to the plan during the course of the case. In addition, respondent filed an objection to a claim on August 26, but did not present an order to the court with respect to that objection until November 2. Respondent estimates that he received forty faxes and letters with questions about the case from the Smiths, who also telephoned and came to his office in person. The Smiths' questions were answered by Dorsey. When Dorsey told respondent that he would have "to start to deal personally with the Smiths," respondent replied that he was going to "get rid of them as clients." On September 30, 1994, the Smiths received a letter from respondent advising them that because one of his secretaries had resigned, respondent could "no longer service [their] case" and that they should acquire new counsel. On October 5, 1994, the Smiths received a second letter from respondent stating that because Dorsey had taken a leave of absence, respondent was short-handed and the Smiths should contact another attorney.

**{¶ 5}** By letter dated October 7, 1994, the Smiths complained to the bankruptcy judge and to relator about respondent's representation of them. At a hearing before the bankruptcy judge on November 7, 1994, respondent met the Smiths for the first time. The judge found that respondent "failed to adequately represent the [Smiths] by not timely pursuing modification of the plan, submitting an order on a claims objection, failing to attend the creditors' meeting, and the withholding of legal services without seeking court authority to withdraw from representation." As a sanction, the bankruptcy judge ordered that respondent refund $850 in fees to the Smiths, and pay $1,000 to the Chapter 13 trustee to be distributed under the plan. Respondent paid both amounts as ordered.

**{¶ 6}** The panel found that respondent had violated DR 1-102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law), 6-101(A)(3)(neglecting a legal matter entrusted to him) and, based on the fact that the initial payment to respondent was for both court costs and legal fees, 9-102(A)(2)(funds belonging in part to a client and part presently and potentially to the lawyer must be deposited in a trust account). The panel recommended, as stipulated by the parties, that respondent be sanctioned with a public reprimand. The board adopted the panel's findings of fact and conclusions, and recommended that the respondent be publicly reprimanded.

———————————

*Bruce A. Campbell* and *Robert W. Sauter,* for relator.

*Charles W. Kettlewell,* for respondent.

———————————

**Per Curiam.**

**{¶ 7}** Count one of relator's complaint charges that respondent failed to provide adequate representation to the Smiths. The primary functions of a lawyer are counseling and advocacy. In this case the respondent failed to perform either task.

**{¶ 8}** The counseling of a client in financial matters, particularly about his or her choice of remedies under the Bankruptcy Code or whether a bankruptcy proceeding can be avoided, is a serious matter that deserves the attention of a qualified attorney. Such counseling would involve, among other things, the effect of an insolvency proceeding on the client's credit rating, the relative advantages of the Chapter 7 and Chapter 13 remedies, the election to retain, surrender, or redeem property, the dischargeability of and the reaffirmation of debts, the applicability of Ohio's exemption laws, R.C. 2329.66 *et seq.*, the avoidance of liens which interfere with exemptions, the recovery of property which may have been transferred, and the tax effects of a filing.

**{¶ 9}** In this case such counseling and advice were left to an untrained employee who characterized herself as a legal assistant. The Chapter 13 plan, which in some cases should be individually crafted to meet the specific needs of the client, was drafted in this case by the employee. The bankruptcy statement of financial affairs contains words of art, such as "transfers," "insider," and "ordinary course of the business," which the courts constantly define and redefine and which should be analyzed and explained by an attorney in relation to the client's case. In this case an untrained employee prepared and explained the document without the supervision or assistance of an attorney. Finally, we note that respondent's handwritten name followed by "AD" appears on the originally filed documents, including the bankruptcy petition, the compensation statement, and the Chapter 13 plan. Fed.R. Bankr. P. 9011 provides in part, as does our Civ.R. 11, that the signature of an attorney on a document means, among other things, that he has read the document. Respondent neither read nor reviewed the documents.

**{¶ 10}** We expect that even in a high-volume practice where an assistant might prepare some forms, an attorney, such as respondent, would at least interview and counsel his clients before a course of action was chosen and the documents drafted. We also expect that he would appear at the meeting of creditors as an

advocate for his clients. In this case respondent not only did not counsel the Smiths or review their documents, he also did not appear to represent them at their meeting with the trustee and their creditors. In fact, respondent did not meet these clients until a hearing on sanctions against him was held eight months after the bankruptcy case was filed.

{¶ 11} We find respondent's actions totally unprofessional and an abdication of his duty to his clients. We adopt the board's finding that respondent violated DR 1-102(A)(6) and 6-101(A)(3).

{¶ 12} Count two of the complaint is directed to respondent's initial receipt of $360 from the Smiths which he deposited in his general account. Relator alleged that respondent regularly failed to deposit fees into an established IOLTA account and so violated DR 9-102 in failing to preserve the identity of funds and property of a client. The board found on this count that respondent violated DR 9-102(A)(2) because "[f]unds belonging in part to a client and in part to the lawyer * * * must be deposited therein [IOLTA account] based upon the fact that the initial payment received was for both payment of court costs and fees." "Court costs" said the board, "were required to be deposited in an IOLTA account and not in the Respondent's operating account."

{¶ 13} We find that the board is in error. DR9-102(A) provides that "[a]ll funds of clients paid to a lawyer * * * *other than advances for costs and expenses*, shall be deposited in one or more identifiable bank accounts * * * and no funds belonging to the lawyer * * * shall be deposited therein * * *." (Emphasis added.) Therefore, under this Disciplinary Rule, the $160 portion of the initial sum relating to court costs should not have been deposited in a client trust account. Respondent's office was not in error in depositing that money in respondent's general account.

{¶ 14} Since respondent has already been sanctioned by the bankruptcy court, we agree that a public reprimand alone is appropriate as recommended by

the board.  We adopt that recommendation and respondent is so reprimanded.  Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————