**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 109.]**

**DAYTON BAR ASSOCIATION V. ANDREWS.**

**[Cite as *Dayton Bar Assn. v. Andrews*, 1997-Ohio-54.]**

*Attorneys at law—Misconduct—One-year suspension with conditions for reinstatement—Charging an excessive fee for work performed—Failure to return client's papers and unearned fees upon withdrawal from employment—Failure to withdraw from employment when mental or physical condition renders further employment unreasonably difficult— Continuing employment while under a conflict of interest—Neglecting an entrusted legal matter—Failing to promptly return to client funds client is entitled to receive.*

(No. 96-2807—Submitted March 19, 1997—Decided June 25, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-91.

_____

{¶ 1} On December 4, 1995, the relator, Dayton Bar Association, charged respondent, Charles G. Andrews of Dayton, Ohio, Attorney Registration No. 0037476, in four counts with violating several Disciplinary Rules while representing clients in bankruptcy cases.

{¶ 2} At a November 25, 1996 hearing before a panel of the Board of Commissioners on Discipline and Grievances of the Supreme Court ("board"), the following facts were stipulated and the panel made the following conclusions.

Count One

{¶ 3} On March 4, 1994, Keith Henry paid respondent $160 to file a petition under Chapter 13 of the federal Bankruptcy Code. Shortly after the payment Henry's car was repossessed. On April 14, 1994, Henry and his wife delivered all their original financial information to respondent and paid him an additional $250

fee to file a Chapter 7 bankruptcy petition for them. After the Henrys signed the petition Henry's wages were garnished twice and after each garnishment respondent told Henry that he was waiting for a court date. Shortly thereafter, Henry's wages were garnished a third time and his wife's credit union account was attached. Respondent falsely continued to assure the Henrys that their bankruptcy petition had been filed and, after the Henrys employed new counsel, respondent failed to respond to that counsel's letters, to return phone calls, and to return the Henrys' payments or papers to them. The panel concluded that with respect to the representation of the Henrys, respondent had violated DR 2-106(A) (charging an excessive fee for the work performed), 2-110(A)(2) and (3) (failure to return a client's papers and unearned fees upon withdrawal from employment), 2-110(B)(3) (failure to withdraw from employment when mental or physical condition renders further effective employment unreasonably difficult), 5-105(B) (continuing employment while under a conflict of interest), 6-101(A)(3) (neglecting a legal matter entrusted to him), and 9-102(B)(4) (failing to promptly return to the client funds the client is entitled to receive).

Count Two

{¶ 4} In June 1994, Charles Hardy and Clara Hardy paid respondent $514 to file a Chapter 13 bankruptcy petition. When the Hardys appeared in bankruptcy court on January 12, 1995, the Chapter 13 trustee said that no plan had been filed and the Hardys were given a two-week continuance. Although an attorney associated with respondent appeared at the continued hearing and assured the trustee that the Hardys would file a plan, that attorney refused to file a plan unless the Hardys paid additional fees, which they were financially incapable of doing. No plan was ever filed. With respect to his representation of the Hardys, the panel concluded that respondent had violated DR 2-106(A), 2-110(A)(3), 2-110(B)(3), 6-101(A)(3), and 9-102(B)(4).

2

Count Three

{¶ 5} In early August 1992, Tara Washington hired respondent to file a Chapter 13 bankruptcy petition. Washington could not continue payments under the Chapter 13 plan and was advised by the bankruptcy court that she could convert her case to a Chapter 7 bankruptcy. Respondent told Washington that although the bulk of her debts were student loans which were normally nondischargeable in Chapter 7, for $425 he would convert her case to a Chapter 7 bankruptcy and file for a hardship discharge. He did not advise Washington that the discharge of her student loans for hardship reasons was highly unlikely. Washington paid respondent the $425 and he converted her case to a Chapter 7 bankruptcy. In January 1995, Washington received a notice of discharge from the bankruptcy court. In March 1995, Washington began receiving payment demands for her student loan obligations. When Washington contacted respondent's office, she was told that he was no longer practicing law. With respect to his representation of Washington, the panel concluded that respondent had violated DR 6-101(A)(3).

Count Four

{¶ 6} In June 1994, respondent received $515 from Betty Lowrie to file a Chapter 7 bankruptcy petition, but respondent did not file the bankruptcy or advise Lowrie that he was withdrawing from representing her. With respect to his representation of Lowrie, the panel concluded that respondent had violated DR 2-106(A), 2-110(A)(3), 2-110(B)(3), 6-101(A)(3), and 9-102(B)(4).

{¶ 7} The parties stipulated that respondent began having psychological problems in September 1994, and that he was evaluated and treated for anxiety and depression in December 1994. Respondent withdrew from the practice of law in January 1995. In March 1995, respondent's wife filed for divorce, and his son was killed in an auto accident in mid-1995.

{¶ 8} The panel recommended that respondent be suspended from the practice of law for one year, that within sixty days of the effective date of his

suspension he make restitution of $410 to the Henrys, $514 to the Hardys, $515 to Lowrie, and $425 to Washington, and that his readmission be conditioned upon such restitution. The panel further recommended that respondent continue psychological counseling or therapy up to and until his readmission, and that his readmission also be conditioned on a recommendation from a mental health professional acceptable to relator. The panel further recommended that relator have the authority to obtain an independent examination of respondent's psychological fitness to practice law, and that relator monitor respondent's practice for twelve months after readmission.

{¶ 9} The board adopted the findings and conclusions of the panel and recommended that respondent be suspended from the practice of law for one year. Further, the board, modifying the panel's suggested sanction, recommended that prior to reinstatement, respondent demonstrate, in the manner set forth in the panel's recommendations, that he has made restitution, received counseling, and is psychologically fit for practice, in addition to the conditions listed in Gov.Bar R. V(10)(A).

———————————

*Mary L. Wiseman*, for relator.

*Ronnie L. Wingate*, for respondent.

———————————

**Per Curiam.**

{¶ 10} As we noted in *Columbus Bar Assn. v. Flanagan* (1997), 77 Ohio St.3d 381, 383, 674 N.E.2d 681, 683, "[t]he counseling of a client in financial matters, particularly about his or her choice of remedies under the Bankruptcy Code and whether a bankruptcy proceeding can be avoided, is a serious matter that deserves the attention of a qualified attorney." If the attorney cannot or will not give this matter his necessary attention, or is not qualified to handle the matter he undertakes, he violates our Disciplinary Rules.

{¶ 11} Respondent received fees from four clients on four separate occasions to handle bankruptcy matters. He failed to file two of the cases, with the result in one case that the client's automobile was repossessed, his wages were garnished three times, and his wife's bank account was attached. In another case, respondent failed to file a Chapter 13 plan, which normally should have been filed with the Chapter 13 bankruptcy petition or within fifteen days thereafter. Fed.R. Bankr. P. 3015(b). All three of these matters indicate a clear neglect of entrusted legal matters.

{¶ 12} In the Washington case, the respondent failed to file a motion for a hardship discharge of his client's student loans, nor did he advise her that a hardship discharge was extremely unlikely.

{¶ 13} In each of these four cases, respondent failed to give necessary attention to his clients' problems. We have previously found that neglect of client matters warrants suspension. *Columbus Bar Assn. v. Clark* (1996), 76 Ohio St.3d 363, 677 N.E.2d 1182; *Disciplinary Counsel v. Crowley* (1996), 76 Ohio St. 3d 365, 667 N.E.2d 1183. Moreover, respondent lied to his clients, leading them to believe he had taken appropriate action on their behalf, and he failed to return fees to the clients for work he had not performed. Such activity has also warranted suspension with reinstatement conditioned upon restitution. *Cincinnati Bar v. Hatfield* (1997), 77 Ohio St. 3d 231, 673 N.E. 2d 1268. To respondent's credit, he terminated his legal practice when he realized, albeit belatedly, that he was no longer capable of providing effective representation.

{¶ 14} We adopt the findings, conclusions, and recommendations of the board. Respondent is hereby suspended from the practice of law for one year. As conditions to reinstatement, respondent shall, in addition to the conditions of Gov. Bar R. V (10)(A), demonstrate that within sixty days of the date of this order he has made restitution of $410 to the Henrys, $514 to the Hardys, $515 to Lowrie, and $425 to Washington, that he has continued psychological counseling or therapy up

to and until his readmission and that his readmission has been recommended by a mental health professional acceptable to relator. In addition, relator shall have the authority to obtain an independent examination of respondent's psychological fitness to practice law and relator shall monitor respondent's practice for twelve months after readmission. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____