[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 411.]

COLUMBUS BAR ASSOCIATION *v*. FOSTER.

[Cite as *Columbus Bar Assn. v. Foster*, 2001-Ohio-199.]

*Attorneys at law—Misconduct—Indefinite suspension—Pattern and practice of carelessness, inattention to detail, procrastination, and failure to communicate with clients and court officials in practicing bankruptcy law.*

(No. 01-368—Submitted April 2, 2001—Decided July 18, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-42.

_____

*Per Curiam.*

{¶ 1} On June 5, 2000, relator, Columbus Bar Association, filed a complaint charging respondent, Thomas Joseph Foster of Columbus, Ohio, Attorney Registration No. 0058540, with several violations of the Code of Professional Responsibility, primarily with respect to his conduct in handling bankruptcy matters.

{¶ 2} When respondent failed to answer the complaint, the Board of Commissioners on Grievances and Discipline ("board") referred the matter to one of its members, Jonathan Hollingsworth ("board member"), for ruling on the motion for default filed by relator.

{¶ 3} Based upon the affidavits attached to relator's motion for default, the board member found that relator's complaint, which was sent by certified mail, was received by "Fredda Sherman" at respondent's address. Relator made several other attempts to effect actual service of the complaint, including attempting to contact respondent not only at his home address but also at his office address.

{¶ 4} The board member found that in July 1998, Richard Mullis retained respondent by paying him $475 to file a personal bankruptcy. Thereafter, Mullis

was unable to contact respondent, and in June 1999, Mullis filed a complaint with relator. Respondent filed a bankruptcy case for Mullis in October 1999. The board member also found that by February 1999, Kathy Opatich had paid respondent the entire $675 fee to file a personal bankruptcy for her. Unable to communicate with respondent, Opatich filed a complaint regarding him with relator in June 1999. In August 1999, respondent filed a bankruptcy petition for Opatich but did not file the schedules and statement of affairs within the time required by rule.

{¶ 5} The board member also found that in early 1999, respondent accepted $1,000 from Jamison Johnson to take over an uncontested divorce proceeding from her previous counsel and to file a personal bankruptcy case for her. In April 1999, respondent misrepresented to Johnson that the bankruptcy petition had been filed, but, in fact, he did not file it until June 1999. However, after filing the bankruptcy action, respondent did not provide the services to Johnson required by court rule. As a result, the court dismissed Johnson's case with prejudice, and she was barred from filing a second bankruptcy case for six months.

{¶ 6} From March 1998 through October 1999, respondent filed seventeen bankruptcy cases, including the Mullis, Opatich, and Johnson cases. In eight of those cases, the clients signed the petitions substantially earlier than the dates on which respondent filed the cases. In one case, the date of the signature had been "whited over" and a photocopy of the paper filed instead of an original so as to make the date of actual signing unclear. In eleven cases, respondent did not file the schedules of debts and statement of financial affairs as required by the bankruptcy rules; in four of those cases, respondent filed the schedules and statement over one hundred days after the petition dates; in three of the cases, respondent never filed them. In five of the cases, respondent did not file in a timely manner other necessary documents. Though directed in July 1999 by the bankruptcy court clerk to redo the Patricia Burba petition because his signature was omitted, respondent had not complied as of May 2000. Four of the cases were dismissed because

respondent failed to file appropriate documents or failed to attend the required first meeting of creditors.

{¶ 7} The board member concluded that respondent's conduct in these cases demonstrated a pattern and practice of carelessness, inattention to detail, procrastination, and failure to communicate with clients and court officials and indicated that he was not competent to practice bankruptcy law. The board member concluded that respondent's conduct violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 1-102(A)(6) (a lawyer shall not engage in conduct adversely reflecting on the lawyer's ability to practice law), 6-101(A)(1) (a lawyer shall not handle a legal matter that he is not competent to handle), 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), 7-101(A)(1) (a lawyer shall not fail to seek the lawful objectives of a client), and 7-101(A)(3) (a lawyer shall not prejudice or damage his client).

{¶ 8} The board member recommended that the motion for default be granted except for the charge that respondent violated DR 6-101(A)(2) (a lawyer shall not attempt to handle a legal matter without preparation adequate in the circumstances) because relator did not establish this violation by clear and convincing evidence. The board member recommended that respondent be indefinitely suspended from the practice of law and that reinstatement depend upon his making full and complete restitution to his former clients. The board adopted the findings, conclusions, and recommendation of the board member.

{¶ 9} We have reviewed the record and adopt the findings and conclusions of the board. As we noted in *Dayton Bar Assn. v. Andrews* (1997), 79 Ohio St.3d 109, 112, 679 N.E.2d 1093, 1095, " 'the counseling of a client in financial matters * * * is a serious matter that deserves the attention of a qualified attorney.' If the attorney cannot or will not give this matter his necessary attention, or is not

qualified to handle the matter he undertakes, he violates our Disciplinary Rules." *Id*., quoting *Columbus Bar Assn. v. Flanagan* (1997), 77 Ohio St.3d 381, 383, 674 N.E.2d 681, 683. See, also, *Cincinnati Bar Assn. v. Wolosin* (1999), 84 Ohio St.3d 401, 704 N.E.2d 566, and *Disciplinary Counsel v. Dahling* (2000), 90 Ohio St.3d 246, 737 N.E.2d 25, where the orders we issued disbarring attorneys were based in large part on their neglect of bankruptcy cases. In this matter, we agree with the recommendation of the board. Respondent is indefinitely suspended from the practice of law in Ohio. Full and complete restitution to respondent's former clients for payments made and services not received is a prerequisite to the filing of any application for reinstatement. Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Pamela N. Maggied, Randall S. Arndt, Patricia K. Block* and *Bruce A. Campbell,* for relator.

————————————