[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 143.]

OFFICE OF DISCIPLINARY COUNSEL ET AL. *v*. NASRALLAH.

[Cite as *Disciplinary Counsel v. Nasrallah*, 2002-Ohio-324.]

*Attorneys at law—Misconduct—Permanent disbarment—Pattern of taking client retainers and failing to carry out contracts of employment.*

(No. 01-1254—Submitted August 28, 2001—Decided January 16, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-34.

_____

*Per Curiam*.

{¶ 1} In 1993, we suspended respondent, Fuad B. Nasrallah of Dayton, Ohio, Attorney Registration No. 0023893, from the practice of law for two years for failure to complete employment agreements with eighteen clients for representation in various immigration matters. We stayed the entire suspension provided that respondent make restitution to the clients and submit to probation for a two-year period. *Disciplinary Counsel v. Nasrallah* (1993), 67 Ohio St.3d 238, 617 N.E.2d 677. Now we are presented with a similar situation involving the same attorney.

{¶ 2} On June 5, 2000, relators, Disciplinary Counsel and Dayton Bar Association, filed a complaint charging respondent with numerous violations of the Code of Professional Responsibility. Relators filed an amended complaint on September 8, 2000. On September 18, 2000, based on the same allegations, relators filed a motion in this court to suspend respondent from the practice of law for an interim period on the ground that respondent posed a serious threat of substantial harm to the public. On October 19, 2000, we granted that motion and imposed an interim suspension on respondent. *Disciplinary Counsel v. Nasrallah* (2000), 90 Ohio St.3d 1225, 737 N.E.2d 965. Previous to that suspension, respondent was

suspended for three weeks from August 1 through August 21, 2000, under Gov.Bar R. V(5)(A)(1)(b) for failing to pay child support. While suspended, respondent appeared on behalf of a client before an administrative agency and met with clients at his office.

{¶ 3} Respondent answered relators' complaint, and the matter was referred to a panel of the Board of Commissioners on Grievances and Discipline ("board"). Based upon stipulations and evidence received at a hearing on December 8, 2000, the panel found that in November 1994, Merzak Dellali paid respondent $1,000 to help him with his asylum claim. Respondent repeatedly advised Dellali that his application for asylum was pending with the Immigration and Naturalization Service ("INS"). However, in November 1998, after hiring a new attorney, Dellali discovered that no such application had ever been filed. The panel concluded that respondent's conduct in this matter violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 6-101(A)(3) (a lawyer shall not neglect an entrusted legal matter), and 7-101(A)(2) (a lawyer shall not fail to carry out a contract for professional employment).

{¶ 4} Similarly, in 1995, another client, Mahmoud Alqara, paid respondent $1,500 to obtain an extension of time for him to voluntarily depart from the United States. In May 1997, Alqara discovered that respondent had done no work on his case, leaving Alqara open to deportation. The panel concluded that with respect to his failure to represent Alqara, respondent violated DR 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 5} The panel also found that after Mr. and Ms. Michael Morgan paid respondent $3,000 in September 1995 to help them establish a business in the Dayton, Ohio area and obtain an E-2 visa for them, respondent only filed articles of incorporation for their business. Through the summer of 1998, respondent

assured the Morgans that their visa application was proceeding smoothly. In fact, the INS had returned the Morgans' application to respondent for more information to be furnished by June 1996, and when respondent failed to meet the date, the INS denied the application. With respect to the Morgans, the panel concluded that respondent violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 6} In addition, the panel found that in October 1997, Farazdak Haidar paid respondent $5,000 and then another $2,650 for respondent to assist Haidar and his wife with various applications before the INS. Haidar discovered in December 1998 that respondent had done nothing in his case although on the infrequent times that Haidar was able to contact respondent, respondent told Haidar that he was working on the case. Haidar retained new counsel and requested a return of his fees. Respondent did not comply. The panel concluded that this conduct violated DR 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4) (a lawyer shall promptly deliver to the client funds or property to which the client is entitled).

{¶ 7} The panel also found that in December 1997, Zhong Ma paid respondent $1,800 and then an additional $1,250 to file an application for employment certification with the Ohio Bureau of Employment Services ("OBES") and to obtain permanent residence. Respondent filed the application on behalf of Ma but failed to respond to OBES's request for more information, with the result that the agency closed the file on Ma's application. The panel concluded that respondent's inaction violated DR 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 8} Again, the panel found that in February 1999, ManTech Systems Solutions Corporation paid respondent $2,600 to handle an immigration matter with OBES on behalf of one of its employees. ManTech later discovered that, contrary to his representations, respondent had taken no action in the matter. When requested to do so in February 2000, respondent did not return the $2,600. The panel concluded that this conduct violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

**{¶ 9}** On March 1, 1997, respondent received $1,750 and then an additional $1,250 from Ali El-Sharif to fully process a green card application. In September 1999, El-Sharif discovered that respondent had not properly filed the documentation that respondent had been retained to file. When El-Sharif terminated respondent's representation and demanded a return of his retainer, respondent gave him two checks, each for $1,500. One of the checks was returned for insufficient funds. Only when El-Sharif sued respondent in small claims court did respondent return the remaining $1,500. The panel concluded that respondent's conduct with respect to El-Sharif violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

**{¶ 10}** Alan Jilani retained respondent in August 1999 and paid him $1,500 to handle a paternity matter. Respondent did not complete his work on the matter until Jilani filed a grievance with relator Dayton Bar Association. This conduct, concluded the panel, violated DR 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

**{¶ 11}** Prior to September 27, 1999, Subhankar Dhar retained respondent, paying him a $700 retainer to file certain papers with the INS. Dhar told respondent that time was important in this matter. Respondent thereafter took no action and failed to respond to Dhar's telephone calls. As a result, Dhar has been unable to return to India or to accept job offers due to his uncertain status in the United States. The panel concluded that respondent's conduct violated DR 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

**{¶ 12}** On or about June 1, 1999, Guosong Li paid respondent $1,935 for a retainer and filing fees to file application for adjustment of status for him and his wife, and he executed the appropriate forms, but thereafter respondent failed to respond to Li's e-mail and fax inquiries. On January 14, 2000, Li went to respondent's office to retrieve some of the papers that he had furnished to respondent. He discovered that no application had been filed on his behalf and that important documents that he had provided to respondent were not in his file.

Without documentation, Li cannot obtain full-time work and has lost over $10,000 in wages. This conduct, said the panel, violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 13} Zahi Chihab paid respondent a retainer of $3,600 to process four INS matters. Before respondent completed his work, Chihab terminated his representation. Respondent agreed to return a portion of Chihab's legal fees but to date has not done so. The panel made no conclusions with respect to respondent's conduct relating to Chihab.

{¶ 14} In March 1999, Sanjay Subron and his employer engaged respondent to process several INS matters. Subron paid respondent $4,615 for attorney and filing fees. In September 1999, respondent falsely advised Subron that all the necessary papers had been filed. When the employer discovered that they had not been filed, it terminated respondent's employment. The panel found that in failing to represent Subron, respondent had violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 15} Prasanna Ramakrishnan engaged respondent to file an application for alien employment certification in February 1999 and paid respondent a $3,800 retainer. A year later, he discovered that the application had not been filed, and respondent falsely stated that the failure was because Ramakrishnan's employer had not supplied certain necessary information. After his employment was terminated, respondent failed to refund the retainer when requested. Respondent's conduct, concluded the panel, violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

{¶ 16} Similarly, in September 1997, respondent took a $3,100 retainer from Vladislav Alyoshkin and Igor Eremenko, telling them that it would take twelve to sixteen months to process their green card applications. By February 2000, after respondent had failed to return numerous phone calls and was unavailable for appointments, Alyoshkin and Eremenko became dissatisfied with

respondent's progress in the matter and discovered that respondent had falsely stated that he had filed the necessary documents. The panel concluded that respondent had violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 17} In April 1998, respondent obtained an extension of stay in the United States for Kang Log Rim, who paid respondent $2,295 to obtain the extension and to process an application for a work permit. An extension of stay until October 6, 1998, was obtained. However, although respondent advised Rim that he was processing the work permit application, he had not submitted an application on Rim's behalf when the extension of stay expired. Nor did respondent obtain an extension of stay beyond October 6, 1998. Until March 2000, respondent repeatedly told Rim that the paperwork had been "filed" but finally admitted that he had filed nothing to process Rim's work permit. Although requested by Rim, respondent did not return any part of the fee that Rim had paid. As a result of respondent's inaction, the status of Rim and his family in the United States is uncertain. The panel concluded that with respect to this matter, respondent had violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

{¶ 18} In October 1999, Elena Gavrilova paid respondent $500 to obtain an H1B visa. Respondent failed to obtain the visa before Gavrilova's temporary visa expired and did not return her retainer despite Gavrilova's repeated requests. This conduct violated DR 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4), according to the panel.

{¶ 19} Nadine Renteria gave respondent a down payment of $425 in October 1999 to represent her in a divorce matter. In April 2000, after repeated, unsuccessful attempts to reach him by telephone, Renteria met with respondent, who asked for an additional $200 and promised to file the necessary papers within thirty days. Four weeks later, when nothing had been filed, Renteria requested a refund of her fees. Respondent has not replied. The panel concluded that

respondent's conduct violated DR 1-102(A)(5), 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

{¶ 20} After assisting Nidal Hajj in certain immigration matters in 1996, respondent advised Hajj that the INS required a bond of him in the amount of $5,000. Hajj gave respondent a check for $5,000 in December 1996. However, when Hajj appeared before the INS on his own in January 2000 because respondent failed to answer his phone calls, Hajj discovered that no bond had been paid. Hajj's new counsel made repeated and so far unavailing requests to respondent for a return of the bond money. The panel concluded that by failing to return Hajj's bond money, respondent had violated DR 9-102(B)(4).

{¶ 21} In October 1997, Elias and Adele Bou Mansour paid respondent $3,500 to appeal a notice of deportation and to seek reclassification of Mr. Bou Mansour's INS status. Respondent took no action although advising the Bou Mansours otherwise, and in February 2000, Mr. Bou Mansour received a letter from the INS ordering him deported. This conduct, concluded the panel, violated DR 1-102(A)(4), 1-102(A)(5), 6-101(A)(3), and 7-101(A)(2).

{¶ 22} Because respondent failed to reply to Disciplinary Counsel's inquiries about the Hajj and Bou Mansour matters, the panel concluded that he violated Gov.Bar R. V(4)(G) (no attorney shall neglect or refuse to assist or testify in an investigation or hearing). In addition, the panel concluded that respondent's appearances on behalf of clients and his counseling them during his three-week suspension for failing to pay child support violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6) (a lawyer shall not engage in conduct adversely reflecting on the lawyer's fitness to practice law), and 3-101(B) (a lawyer shall not practice law in a jurisdiction where doing so is in violation of the regulations of that jurisdiction).

{¶ 23} The panel received evidence with respect to respondent's depression as a mitigating factor in assessing his conduct. It also noted that respondent

conducted himself in a highly professional matter at the hearing and showed remorse.

{¶ 24} The panel recommended that respondent be indefinitely suspended from the practice of law in Ohio and in addition (1) that respondent pay full restitution to his clients and to the Client Security Fund; (2) that respondent comply with his continuing legal education requirements and specifically include courses that relate to time management and running a legal practice; (3) that respondent continue counseling with a psychiatrist or a psychologist for the duration of his suspension and upon reinstatement for a period of two years; (4) that respondent authorize his treating psychiatrist or psychologist to provide the Dayton Bar Association with reports of his treatment at least on a quarterly basis; (5) that prior to any reinstatement, respondent authorize the treating psychiatrist or psychologist to provide a report to the Dayton Bar Association regarding respondent's fitness to practice law; (6) that respondent be monitored by an attorney designated by the Dayton Bar Association for a period of two years after his reinstatement; (7) that upon his reinstatement to the practice of law respondent establish an IOLTA (Interest on Lawyers Trust Account); (8) that upon reinstatement, respondent maintain professional liability insurance and provide evidence of that insurance to the Dayton Bar Association; and (9) that respondent remain current in his child support obligations.

{¶ 25} The board adopted the findings and conclusions of the panel, but also concluded that by failing to return a portion of Zahi Chihab's legal fees, respondent violated DR 9-102(B)(4). The board adopted the recommendations of the panel.

{¶ 26} We have reviewed the record and adopt the findings and conclusions of the board but not its recommendation. In 1993, we suspended respondent for failing to complete contracts with eighteen clients who employed him to proceed with various immigration matters. Today, we review his failure to represent adequately twenty other persons who employed him on immigration matters.

**{¶ 27}** We have said on many occasions that taking client retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. *Disciplinary Counsel v. Sigall* (1984), 14 Ohio St.3d 15, 17, 14 OBR 320, 321, 470 N.E.2d 886, 888. We characterized as "outrageous conduct" the "pattern of taking large sums of money from vulnerable clients and families in immigration and post-conviction cases and doing little or nothing on their behalf." *Cleveland Bar Assn. v. Nardi* (1991), 61 Ohio St.3d 538, 541, 575 N.E.2d 793, 795.

**{¶ 28}** The pattern established by this attorney over ten years ago and continuing even today is too egregious to allow respondent to practice law again. He has demonstrated that he is, as truly characterized by the relators in their motion for interim suspension, "a substantial threat of serious harm to the public." Respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Stacy Solochek Beckman*, Assistant Disciplinary Counsel, for relator Disciplinary Counsel.

*Roger J. Makley* and *Mark E. Stone,* for relator Dayton Bar Association.

*Gary C. Schaengold,* for respondent.

––––––––––––––––––