[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 292.]

COLUMBUS BAR ASSOCIATION *v*. FOSTER.

[Cite as *Columbus Bar Assn. v. Foster*, 2002-Ohio-6415.]

*Attorneys at law—Misconduct—Permanent disbarment—Repeatedly taking clients' money without performing promised legal services—Failing to cooperate in investigation of misconduct—Failing to comply with a previous order indefinitely suspending license to practice law.*

(No. 2002-1107—Submitted August 27, 2002—Decided December 4, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 02-03.

————————————

**Per Curiam.**

{¶1} This case requires us to decide the sanction for an attorney who repeatedly took his clients' money without performing promised legal services, failed to cooperate in the investigation of his misconduct, and did not comply with a previous order suspending indefinitely his license to practice law in Ohio. The Board of Commissioners on Grievances and Discipline found that respondent, Thomas Joseph Foster of Bexley, Ohio, Attorney Registration No. 0058540, committed these acts and others in violation of the Code of Professional Responsibility and recommended that he be disbarred. We agree that this misconduct warrants disbarment.

{¶2} In a complaint filed on February 4, 2002, relator, Columbus Bar Association, charged respondent with nine counts of professional misconduct. Respondent was served with the complaint but did not answer, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner for the board

considered the motion and made the following findings of fact and conclusions of law.

## I. Misconduct

### A

{¶3} With respect to Count One, the master commissioner found that in February 2000, respondent accepted a $500 retainer and a $100 deposit for court costs to represent a client in a child-custody dispute. Respondent did not initiate proceedings as promised before his license to practice law was suspended indefinitely on July 18, 2001, by order of *Columbus Bar Assn. v. Foster* (2001), 92 Ohio St.3d 411, 750 N.E.2d 1112. Respondent also did not contact his client to return her money after this suspension and did not assist the client in finding new counsel.

### B

{¶4} As to Count Two, the master commissioner found that another client paid respondent $375 in August 1997 to represent her in a bankruptcy. Respondent filed the bankruptcy petition, but the cause was later dismissed due to his failure to meet court deadlines, and he did not tell his client about the dismissal. Respondent eventually refiled the action, but his prior misfeasance caused his client to have not one, but two, bankruptcy entries on her credit report.

### C

{¶5} Regarding Count Three, the master commissioner found that a client paid respondent $500 in 1998 to represent her in a child-support proceeding. Respondent apparently did nothing in the case for about 18 months. During this period, he also misrepresented to his client several times that a court date had been scheduled and later cancelled by the court. Respondent ultimately returned the client's retainer and offered to represent her pro bono, but he did not follow through with this representation. And after his suspension on July 18, 2001, respondent did not return the client's file or assist her in finding a new attorney.

D

**{¶6}** With respect to Count Four, the master commissioner found that while representing an estate in probate court, respondent failed to comply with a 1997 court order to transfer title to property.

E

**{¶7}** As to Counts Five and Six, the master commissioner found that two separate clients had each paid respondent at least $500 during March and May 2000 to represent them in matters involving family law. Respondent apparently again did nothing for these clients before his suspension took effect on July 18, 2001. And afterward, he did not return the clients' money or files, nor did he assist one client in finding a new attorney.

F

**{¶8}** Regarding Count Seven, the master commissioner found that a client paid respondent $850 in March 2000 for representation in a child custody and a contempt case. Respondent appeared in court for the client but did nothing on the client's behalf except secure continuances of two hearing dates. The client claims that she was never able to contact respondent again. The client also averred that when she appeared in court without respondent on November 2, 2000, the judge advised the client to discharge him and file a grievance. Respondent never returned the client's money or file.

G

**{¶9}** With respect to Count Eight, the master commissioner found that a client's mother paid respondent a $500 retainer in the fall of 1999 to represent her son in a criminal case. The son ran away from home shortly before a court date scheduled for January 2, 2000. The client's mother averred that respondent appeared in court to obtain a continuance. He also advised the client's mother at that time that he could not do more on the case until her son was found. But by the

time the son returned, the mother was unable to find respondent, and her son had to rely on a public defender.

H

{¶10} Finally, as to Count Nine, the master commissioner found that respondent has failed to respond to relator's letters inquiring about these eight grievances. Each letter, save one, was sent by certified and regular mail to respondent's business address as on file with the Office of Attorney Registration. The one letter sent only by regular mail, which concerned the client described under subsection A, was returned, marked "Attempted Not Known." The other letters were not returned and presumably were delivered. The certified letters were either accepted by someone at the business address or were returned without signature. Relator also sent an investigator to respondent's residence. When no one answered the door, the investigator left copies of all eight grievances and a subpoena for respondent's deposition and the production of documents. Respondent did not comply.

I

{¶11} The master commissioner concluded that the conduct described in subsections A through H violated DR 1-102(A)(4) (engaging in conduct involving misrepresentation), (5) (engaging in conduct prejudicial to the administration of justice), and (6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law); 6-101(A)(3) (neglecting an entrusted legal matter); 7-101(A)(1) (failing to seek a client's lawful objective), (2) (failing to carry out a contract of employment), and (3) (prejudicing or damaging a client); 9-102(B)(4) (failing to deliver client's funds or property); and Gov.Bar R. V(4)(G) (failing to cooperate in a disciplinary investigation). The board adopted the master commissioner's findings of misconduct.

## II. Recommendation and Sanction

{¶12} In recommending a sanction for this misconduct, the master commissioner determined that there was no evidence of any mitigating factors. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. As aggravating factors, the master commissioner considered not only that respondent is already serving an indefinite suspension for 17 previous instances of client neglect, *Foster,* 92 Ohio St.3d 411, 750 N.E.2d 1112, but that he has still not complied with various procedural requirements of that order. The master commissioner recommended that respondent be disbarred. The board adopted this recommendation.

{¶13} We agree that respondent committed the misconduct found by the board. We also agree with the board's recommended sanction. Disbarment is ordinarily the sanction when an attorney's misconduct permeates his practice in the way that respondent's misconduct did in this case. *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 726 N.E.2d 993. And it is especially appropriate where, as here, the attorney has consistently ignored investigative inquiries into his neglect. In fact, disbarment can be warranted for neglect of this magnitude even when an attorney has cooperated in the disciplinary process and has shown mitigating circumstances surrounding the misconduct. *Disciplinary Counsel v. Nasrallah* (2002), 94 Ohio St.3d 143, 761 N.E.2d 11.

{¶14} Accordingly, respondent is permanently disbarred. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

Bruce Campbell, Bar Counsel, and Jill Snitcher McQuain, Assistant Bar Counsel; Pamela N. Maggied and Randall S. Arndt, for relator.

_____