GREENE COUNTY BAR ASSOCIATION *v.* FODAL.

[Cite as *Greene Cty. Bar Assn. v. Fodal,*
100 Ohio St.3d 310, 2003-Ohio-5852.]

(No. 2003–1075—Submitted August 26, 2003—Decided November 19, 2003.)

**Per Curiam.**

{¶ 1} Respondent, Joe R. Fodal, last known address in Fairborn, Ohio, Attorney Registration No. 0011515, was admitted to the Ohio bar in 1972. On June 13, 2001, we suspended respondent indefinitely from the practice of law because he had neglected clients' cases, had failed to refund unearned fees, and did not cooperate in the disciplinary proceedings. *Greene Cty. Bar Assn. v. Fodal* (2001), 92 Ohio St.3d 99, 748 N.E.2d 1097.[1] On February 5, June 11, and August 13, 2001, respectively, relator, Greene County Bar Association, filed three additional complaints charging respondent with numerous new counts delineating essentially the same professional misconduct.

---

1. By that time, respondent's license had already been placed under an interim suspension pursuant to Gov.Bar R. V(5a)(B) based on evidence that his continued practice posed a substantial risk of harm to the public. *Greene Cty. Bar Assn. v. Fodal* (2001), 91 Ohio St.3d 1519, 747 N.E.2d 246.

{¶ 2} Respondent received notice of these complaints through certified mail, personal service, or, when he did not claim his certified mail, service on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). But as in the previous disciplinary proceedings against him, respondent did not answer any of the three complaints, and relator moved for default in each case pursuant to Gov.Bar R. V(6)(F). Because of the similarity of the complaints, the Chairman of the Board of Commissioners on Grievances and Discipline consolidated the cases. A master commissioner appointed by the board considered relator's motions and the ten counts of misconduct alleged in the first complaint, the 12 counts of misconduct alleged in the second complaint, and the four counts of misconduct alleged in the third complaint. The master commissioner then made findings of fact, conclusions of law, and a recommendation.

## Complaint No. 1

{¶ 3} With respect to Count I, the evidence substantiates that respondent accepted a retainer in May 2000 from Ross C. and Lou Ann Humbarger to represent them in an eviction matter. Respondent never filed the action, did not return telephone calls inquiring about the status of the clients' case, and did not refund his clients' money.

{¶ 4} Regarding Count II, the master commissioner found that the Greene County Probate Court appointed respondent in April 1999 to be the executor and attorney for an estate. On the court's direction, respondent submitted a status report setting forth actions required to complete and close the estate. However, he did not complete the necessary work.

{¶ 5} With respect to Count III, the master commissioner found that respondent accepted a retainer in 1988 to administer another estate in the Greene County Probate Court. Twelve years later, respondent still had not opened the estate. In April 2000, the court ordered respondent to appear, and respondent promised to administer the estate promptly. He failed to do so.

{¶ 6} Regarding Count IV, the master commissioner found that respondent accepted $400 in March 1999 from Holly J. Cantrell to represent her in bankruptcy proceedings. Respondent never filed the action, nor did he return Cantrell's money.

{¶ 7} With respect to Count V, the evidence substantiates that respondent accepted a $700 retainer in early 2000 to represent Lou Ann Haley in her divorce case. Respondent never filed the action, nor did he return Haley's money despite her repeated requests.

{¶ 8} Regarding Count VI, the evidence substantiates that respondent accepted $400 of his quoted $600 fee from Anthony S. Wilbik Sr. and promised to represent Wilbik's daughter in her divorce. Respondent failed to file divorce

papers on the daughter's behalf and did not respond to Wilbik's request for a refund.

{¶ 9} With respect to Count VII, the evidence substantiates that respondent accepted a retainer in April 1999 from Melissa G. Brown to represent her in her divorce. Respondent never filed the action and only partially refunded Brown's money.

{¶ 10} Regarding Count VIII, the evidence substantiates that respondent accepted a retainer in June 2000, promising to represent a client in a child-visitation case. Respondent took no action on the client's behalf and did not return the retainer as requested.

{¶ 11} With respect to Count IX, the evidence substantiates that sometime before May 2000, Thelma J. Pross hired respondent to arrange the transfer of her deceased daughter's automobile and to resolve some issues concerning retirement benefits for the daughter's children. Respondent did not perform as promised and did not refund any unearned fees.

{¶ 12} Regarding Count X, the evidence substantiates that in October 1999, respondent represented Jonell Shaw in a domestic relations case. Respondent prejudiced Shaw by failing to adequately advise her of the court's final determination or her right to appeal, among other claimed entitlements. Afterward, respondent also ignored his client's efforts to communicate with him.

## Complaint No. 2

{¶ 13} With respect to Count I, the master commissioner found that respondent accepted a retainer from Barbara Storms to file bankruptcy on her behalf. Respondent never filed the bankruptcy and did not return the unearned fee.

{¶ 14} Regarding Count II, the evidence substantiates that Sharon Allen retained respondent in 1999 to represent her in a personal injury case. When respondent took no action, Allen requested that he return her file so that she could contact another attorney before the statute of limitations on her claim elapsed. Respondent did not reply or return the client's file.

{¶ 15} With respect to Count III, the master commissioner found that Allan Shapiro retained respondent in early 2000 to defend him on three legal matters. To Shapiro's detriment, respondent did not pay various fines, costs, and restitution from the money paid to him for these purposes. He also failed to respond to his client's numerous attempts to inquire about respondent's progress.

{¶ 16} Regarding Count IV, the master commissioner found that Ronald G. Allen retained respondent in October 2000 to pursue custody of his daughter. Respondent did nothing in the case and did not refund Allen's money.

{¶ 17} With respect to Count V, the evidence substantiates that Grant Kunkle retained respondent in July 2000, paying $575 for respondent to represent him in his divorce. Respondent took Kunkle's money and took no action on his behalf.

{¶ 18} Regarding Count VI, the evidence substantiates that Charles H. Stump retained respondent in June 1998 to represent him in a bankruptcy proceeding. Respondent did not file the action for his client, and Stump's wages were later garnished. Respondent also did not refund Stump's money as requested.

{¶ 19} With respect to Count VII, the evidence substantiates that Wanda M. Fox retained respondent in 1999 to file a lawsuit on her behalf and to prepare new wills and a deed. Respondent apparently prepared the wills, but he did not complete the other work as promised and repeatedly failed to answer Fox's requests for information and the return of the deed.

{¶ 20} Regarding Count VIII, the evidence substantiates that Regina S. Crosley retained respondent in August 2000 to represent her in a criminal case. Respondent did not adequately advise Crosley about various proceedings in that matter, and she ultimately discharged him. Respondent did not refund any unearned portion of Crosley's money.

{¶ 21} With respect to Count IX, the master commissioner found that Nicole Owens retained respondent in August 2000 to represent her in divorce proceedings. He took no action in the case, and he did not refund the tendered fee.

{¶ 22} With respect to Count X, the master commissioner found that Geoffrey T. Hollis retained respondent in January 1997 to file a lawsuit on his behalf. Respondent filed the case, but it was later dismissed for failure to prosecute. Respondent did not refund any unearned fees.

{¶ 23} Regarding Count XI, the evidence substantiated that Karen K. Philabaum paid respondent $500 to pursue her divorce and prepare her will. Respondent did not complete this work, he did not return Philabaum's telephone calls, and he did not refund her money.

{¶ 24} With respect to Count XII, the evidence substantiates that Lisa D. Stultz paid respondent $300 to initiate child-custody proceedings and a medical malpractice action. Respondent did nothing for Stultz and did not refund her money.

## Complaint No. 3

{¶ 25} With respect to Count I, the master commissioner found that Debbra S. Salo retained respondent in May 2000 to pursue an action for back rent against a former tenant. Respondent did not file any action on Salo's behalf and did not return any unearned fees.

{¶ 26} With respect to Count II, the evidence substantiates that Billy and Barbara Bohannon retained respondent in August 1998 to prepare a will and to prepare and record a survivorship deed. Respondent prepared the will, but if he completed the deed, he never filed it. He also did not refund any of his clients' retainer or return documents that they requested.

{¶ 27} With respect to Count III, the evidence substantiates that respondent was retained in June 1999 to pursue a claim for the return of personal property taken during the repossession of a vehicle. For nearly two years, the clients attempted with little success to remain in contact with respondent and keep informed of his progress in the case. They ultimately learned that he had never filed the suit that they had hired respondent to pursue.

{¶ 28} Finally, regarding Count IV, the evidence substantiates that Samuel James Hamilton retained respondent in 1999 to file a divorce action. Although Hamilton paid respondent $500, he never completed the work and did not respond to Hamilton's requests for a refund. Hamilton later retained another attorney to represent him.[2]

{¶ 29} For all of the preceding grievances, the master commissioner found respondent in violation of DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law), 6–101(A)(3) (neglecting an entrusted legal matter), 7–101(A)(2) (failing to carry out a contract of employment), and 9–102(B)(4) (failing to promptly deliver funds or other property belonging to a client). The master commissioner also found that respondent had violated Gov.Bar R. V(4)(G). While respondent spoke on the telephone with relator's investigator about the complaints, he did not submit answers to any of relator's letters of inquiry concerning the grievances.

{¶ 30} In recommending a sanction for this misconduct, the master commissioner considered mitigating and aggravating factors pursuant to Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. As a mitigating feature, the master commissioner relied on relator's representation that respondent had formerly served as a municipal judge and had previously enjoyed a good reputation in his local bar as a qualified and able practitioner. As aggravating features, the master commissioner found that respondent's license is under an indefinite suspension and that he committed multiple offenses establishing a pattern of misconduct. In addition, respondent has failed to acknowledge

---

2. Hamilton was also a grievant against respondent in *Greene Cty. Bar Assn. v. Fodal* (2001), 92 Ohio St.3d 99, 748 N.E.2d 1097.

the wrongfulness of his misconduct and has failed to make restitution to his victims.

{¶ 31} The master commissioner recommended, consistent with relator's suggestion, that respondent be disbarred. The board adopted the master commissioner's findings of misconduct and recommendation.

{¶ 32} We agree that respondent violated DR 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(2), and 9–102(B)(4), and Gov.Bar R. V(4)(G). We also agree that respondent should be disbarred. Respondent routinely took his clients' money and provided nothing in return. In the absence of any compelling mitigating evidence, the sanction for this misconduct and his disregard of the disciplinary process is disbarment. *Columbus Bar Assn. v. Foster*, 97 Ohio St.3d 292, 2002-Ohio-6415, 779 N.E.2d 755, ¶ 13.

{¶ 33} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

David R. Miles and Paul W. Barrett, for relator.