WARREN COUNTY BAR ASSOCIATION *v.* MARSHALL.

[Cite as *Warren Cty. Bar Assn. v. Marshall,*

**105 Ohio St.3d 59, 2004-Ohio-7011.**]

*Attorneys at law — Misconduct — Two-year suspension, stayed on conditions — Conduct involving dishonesty or deceit — Conduct prejudicial to administration of justice — Conduct adversely reflecting on fitness to practice law — Charging excessive fee — Failure to maintain records and accounts — Neglect of entrusted legal matter — Damaging a client — Failure to cooperate.*

(No. 2004-1011–Submitted October 26, 2004 — Decided December 29, 2004.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-050.

_____

**Per Curiam**.

{¶ 1} Respondent, Bernard Marshall, of Lebanon, Ohio, Attorney Registration No. 0067838, was admitted to the practice of law in Ohio in 1997. On June 9, 2003, relator, Warren County Bar Association, filed a complaint against respondent alleging violations of the Code of Professional Responsibility arising out of his representation of two clients. Respondent did not file an answer until October 17, 2003, at which time he admitted all of the allegations in the complaint. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on the parties' stipulations, testimony and other evidence, made findings of fact, conclusions of law, and a recommendation.

{¶ 2} Before the panel, the complaint was amended to correct certain inaccuracies and typographical errors as to the cited sections of the Code of

Professional Responsibility, and respondent did not object. The parties also stipulated to the truth of the allegations in the complaint.

{¶ 3} In late 2000 and early 2001, respondent was retained by Roger Scott and Cornella Turpin, respectively. Scott retained respondent to represent him in a personal injury matter. Respondent, however, did nothing in the case for the 14 months preceding the filing of a grievance against him. Respondent later testified before the panel that he had no experience with personal injury cases and that he should have at least asked for help. While Scott eventually secured other counsel and suffered no financial loss at respondent's hands, Scott nevertheless had difficulty with his insurance company due to respondent's inaction and in getting his file from respondent both to his insurer and to his new counsel.

{¶ 4} Turpin hired respondent to represent her in a zoning matter. As with Scott, respondent again did nothing. He never filed anything on Turpin's behalf, and he did not take steps to defend his client's interest. Respondent did not notify Turpin of any hearings and failed to attend a scheduled hearing. Respondent admitted at the hearing that he was unqualified to handle Turpin's case but accepted it nevertheless because he needed the money.

{¶ 5} The parties stipulated that Turpin paid respondent approximately $1,000, but respondent never accounted for the money despite repeated requests. The parties also stipulated that Turpin gave respondent $800 for filing fees, with no filings forthcoming. None of this money was ever returned to Turpin. There was also some dispute as to whether Turpin was fined as a result of respondent's inaction, and this matter was not conclusively resolved at the hearing.

{¶ 6} Respondent admitted to the panel both his inadequate representation and his failure to cooperate with the investigation, and he accepted full responsibility for his actions. As to the latter, respondent testified that he initially ignored relator's inquiries, hoping that the matter would simply go away. As to the former, respondent attributed his misconduct to alcoholism, stating that

all that really mattered to him at the time in question was drinking. He, in fact, attributed his failure to attend Turpin's zoning hearing to a hangover precipitated by a bout of drinking the night before.

{¶ 7} The panel ultimately found violations of DR 1-102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (barring conduct prejudicial to the administration of justice), 1-102(A)(6) (barring conduct that adversely reflects on the lawyer's fitness to practice law), 2-106(A) (prohibiting an illegal or clearly excessive fee), 9-102(B)(3) (requiring a lawyer to maintain complete records and appropriate accounts), 9-102(B)(4) (requiring prompt payment of the client's funds or other properties in the lawyer's possession), 6-101(A)(1) (prohibiting a lawyer from accepting a case that the lawyer is not competent to handle), 6-101(A)(2) (prohibiting a lawyer from handling a legal matter without adequate preparation), 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(2) (requiring a lawyer to carry out a contract of employment), 7-101(A)(3) (prohibiting a lawyer from prejudicing or damaging a client), and Gov.Bar R. V(4)(G) (requiring a lawyer's cooperation in disciplinary proceedings).

{¶ 8} In considering the proper sanction, the panel examined both aggravating and mitigating evidence. As to the former, the panel felt that respondent's actions demonstrated a pattern of misconduct and included multiple offenses. It also concluded that respondent acted dishonestly and with a selfish motive in that respondent knew in both cases that he was unqualified to undertake representation but did so anyway because of either indifference or financial need.

{¶ 9} In mitigation, the panel noted that respondent had no previous disciplinary violations. It also noted respondent's willingness to make restitution in the Turpin matter once the amount of loss has been determined.

{¶ 10} The panel discussed respondent's alcohol use at length, citing three areas of concern. The first was the extent to which respondent recognized the true

extent of his dependency.  Respondent confessed that his description of himself at the hearing as an alcoholic was only the second time he had made that declaration.  By his own admission, respondent continued to hide his condition from loved ones and associates, even when questioned about his new sobriety.

{¶ 11} This concealment, in turn, caused the panel to question respondent's commitment to recovery.  After being diagnosed as alcohol dependent, respondent entered into a contract with the Ohio Lawyers Assistance Program, Inc. ("OLAP").  In it, respondent, among other promises, agreed to attend at least three Alcoholics Anonymous meetings per week.  At the time of the hearing, however, respondent was on average attending only two sessions per week despite the availability of meetings across the street from his office.

{¶ 12} Finally, the panel noted that respondent had previously practiced law in a "somewhat isolated setting without a structured office management style."  The panel determined that this may have been caused by his drinking problem.  The panel was encouraged that respondent had since joined a group of attorneys in a more stable and structured environment.  Moreover, he had hired business and organizational consultants to overhaul his business and office records and had access to a professional office staff.

{¶ 13} The panel recommended a two-year suspension from the practice of law, with the entire suspension stayed on the condition that respondent fully comply with the OLAP contract.  It further recommended that respondent be monitored both to ensure compliance with all the conditions of the stay and to ensure that his new office-management practices were, indeed, effective.  Finally, the panel  recommended restitution to Turpin for attorney and filing fees paid to respondent and the attorney fees paid to Turpin's new counsel, including a plan for repayment, to complete the work for which respondent had been retained.

{¶ 14} The board adopted the panel's findings of fact, conclusions of law and recommendation.  We, in turn, adopt the board's report in full for his

violations of DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 2-106(A), 9-102(B)(3), 9-102(B)(4), 6-101(A)(1), 6-101(A)(2), 6-101(A)(3), 7-101(A)(2), and 7-101(A)(3) and Gov.Bar R. V(4)(G). Respondent is hereby suspended from the practice of law in Ohio for two years. The entire suspension is stayed contingent upon (1) full compliance with the OLAP contract, (2) restitution to Turpin for attorney and filing fees paid to respondent and attorney fees paid to successor counsel to complete the relevant work, including a plan for repayment, (3) monitoring of respondent's compliance with these conditions, and (4) monitoring of respondent's office-management practices. Toward this end, we concur in the board's recommendation that respondent be monitored by attorneys appointed in accordance with Gov.Bar R. V(9)(B) by both relator and Disciplinary Counsel, given the recent relocation of respondent's practice to an adjacent county. If respondent violates any of the conditions of this stay, the stay will be lifted and respondent will serve the two-year suspension.

{¶ 15} Costs are taxed to the respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

John S. Mengle and Michael J. Davis, for relator.

Bernard Marshall, pro se.

_____