CUYAHOGA COUNTY BAR ASSOCIATION *v.* SMITH.

[Cite as *Cuyahoga Cty. Bar Assn. v. Smith,*
115 Ohio St.3d 95, 2007-Ohio-4270.]

(No. 2007–0768—Submitted June 6, 2007—Decided August 29, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Richard Ford Smith Jr. of Cleveland, Ohio, Attorney Registration No. 0018125, was admitted to the Ohio bar in 1985. For the reasons explained below, we conclude that respondent should be permanently disbarred from the practice of law in Ohio.

{¶ 2} In 1999, we publicly reprimanded respondent for violating DR 6–101(A)(3) (barring a lawyer from neglecting an entrusted legal matter) and 7–101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of professional employment). *Lake Cty. Bar Assn. v. Smith* (1999), 85 Ohio St.3d 402, 709 N.E.2d 116.

{¶ 3} On November 16, 2006, relator, Cuyahoga County Bar Association, filed an amended complaint charging respondent with 11 counts of professional misconduct. Respondent was served with a copy of the complaint but did not answer, and relator moved for default under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact and conclusions of law, which the board adopted, as well as a recommendation, which the board rejected.

Misconduct

*Count One*

{¶ 4} Carrie L. Davis paid respondent a $450 retainer and $209 for court costs in connection with a Chapter 7 bankruptcy matter. Respondent then prepared and filed a Chapter 7 bankruptcy petition for Davis in November 2004.

{¶ 5} While representing Davis, respondent incorrectly advised her that she could spend her state and federal income tax refunds rather than turning those

funds over to the bankruptcy trustee. Davis relied on respondent's advice and used the refunds to pay personal obligations.

{¶ 6} When a hearing was scheduled in the bankruptcy court on the trustee's request that Davis be ordered to turn over the nonexempt portion of her tax refunds, respondent told Davis that he would attend the hearing on her behalf. After the May 2005 hearing date, Davis called respondent several times and left messages for him at his office, his home, and on his cell-phone voice mail. Respondent did not return the calls.

{¶ 7} In June 2005, respondent signed an agreed order for Davis to turn over $1,772—the nonexempt portion of her tax refunds—to the bankruptcy trustee within 30 days, but respondent never told Davis about the order. Only after Davis received a summons and complaint filed by the bankruptcy trustee in August 2005 did she learn that respondent had signed an agreed order directing her to pay $1,772 to the trustee. Davis tried to reach respondent to find out what was happening with her bankruptcy case, but respondent failed to return any of her calls from May 2005 until October 19, 2005.

{¶ 8} Approximately one hour before Davis was to appear in the bankruptcy court on October 19, 2005, respondent called her and acknowledged that he had neglected her case. He told Davis that he would personally pay $100 per month to the bankruptcy trustee to resolve the tax-refund issue, and he assured her that she did not need to attend the hearing that day.

{¶ 9} Because she had lost confidence in respondent, Davis did attend the hearing. She waited outside the courtroom and was eventually told again by respondent that he would pay the tax-refund obligation to the bankruptcy trustee from his own funds in $100 monthly installments. On October 20, 2005, the trustee sent respondent an agreed entry memorializing the promised payments, but respondent failed to sign the document and then told Davis that he had never received any papers to sign. After she learned that respondent had failed to sign the agreed entry and had misrepresented to her that he had not received it, Davis discharged respondent and signed the document herself.

{¶ 10} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law), 6–101(A)(2) (prohibiting a lawyer from handling a legal matter without adequate preparation), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client), as well as Gov.Bar R. V(4)(G) (requiring attorneys to cooperate with and assist in any disciplinary investigation).

*Count Two*

{¶ 11} In August 2002, respondent agreed to represent James Wilson in a bankruptcy matter. Wilson agreed to pay respondent $657 for attorney fees and court costs associated with the filing of a Chapter 7 bankruptcy petition.

{¶ 12} During calendar years 2002 through 2005, respondent failed to file the bankruptcy petition or take any other action on Wilson's behalf. In October 2005, Wilson made an additional payment to respondent, bringing the total amount paid to $825. Although respondent told Wilson that he would file the bankruptcy petition before changes to the bankruptcy laws took effect on October 17, 2005, respondent failed to file the petition or take any other action on Wilson's behalf in 2005.

{¶ 13} Respondent finally filed Wilson's bankruptcy petition in February 2006. Because respondent had failed to include some paperwork that must be filed with any bankruptcy petition filed after the October 17, 2005 change in the bankruptcy laws, Wilson's bankruptcy case was dismissed. Respondent did not return Wilson's phone calls inquiring about the dismissal, and he never replied to Wilson's or relator's requests for an accounting of the work performed on Wilson's case. Respondent also did not respond to relator's other requests for information about his representation of Wilson.

{¶ 14} Respondent failed to verify for relator that he had maintained the requisite professional-liability insurance during his representation of Wilson, and respondent never told Wilson that he lacked that insurance.

{¶ 15} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A) (requiring an attorney to disclose to clients that he does not carry professional-liability insurance), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3) (requiring a lawyer to maintain complete records of all funds of a client and to render appropriate accounts), as well as Gov.Bar R. V(4)(G).

*Count Three*

{¶ 16} In August 2005, respondent agreed to represent Delilah Rogers on a bankruptcy matter, and he filed a Chapter 13 bankruptcy petition on her behalf. Several days after the filing, respondent was notified by the bankruptcy court that the petition was defective because Rogers had not signed part of it. Respondent failed to notify Rogers about the deficiency or take any action to correct it, and he failed to appear at a creditors' meeting for her. Respondent also failed to appear at a show-cause hearing and failed to pay the necessary filing fee for the case.

{¶ 17} Rogers was unaware of court dates for the case, and she received no communication from respondent about them. The bankruptcy court dismissed

the case, and respondent failed to notify Rogers or take any action to protect Rogers's interests. Respondent did not reply to relator's inquiries about Rogers's grievance against him, and he did not provide evidence that he had maintained professional-liability insurance while representing her or that he had notified her of his lack of insurance.

{¶ 18} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3), as well as Gov.Bar R. V(4)(G).

### Count Four

{¶ 19} In July 2003, respondent agreed to represent Pamela Davis in a bankruptcy matter, and he filed a Chapter 13 bankruptcy petition on her behalf. The bankruptcy court approved a payment plan for her, and Davis made timely payments. Her bankruptcy case was dismissed, however, because her payments were mistakenly applied to her husband's Chapter 13 case.

{¶ 20} Davis contacted respondent about the problem, and he agreed to appeal the dismissal. Respondent failed, however, to file an appeal or take any other action on Davis's behalf. He also failed to return Davis's phone calls, prompting Davis to retain another attorney to do the work that respondent failed to complete for her.

{¶ 21} Also, respondent failed to obtain a signed acknowledgement from Davis indicating that she was aware that respondent lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Davis's grievance against him.

{¶ 22} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3), as well as Gov.Bar R. V(4)(G).

### Count Five

{¶ 23} In November 2004, respondent agreed to represent Robert Lindeman in a bankruptcy matter, and Lindeman paid respondent's $620 fee in April 2005. Respondent told Lindeman in September 2005 that a bankruptcy petition had been filed, and respondent assured Lindeman in November 2005 and February 2006 that a hearing would be held soon. Lindeman later learned that respondent had never filed the bankruptcy petition.

{¶ 24} Also, respondent did not obtain a signed acknowledgement from Lindeman indicating that he was aware that respondent lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Lindeman's grievance against him.

{¶ 25} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), as well as Gov.Bar R. V(4)(G).

### Count Six

{¶ 26} In August 2005, Ruby Watson met with respondent and paid him $504 to file a Chapter 7 bankruptcy petition for her. Respondent never filed the bankruptcy petition and never returned Watson's phone calls about the case.

{¶ 27} Also, respondent did not obtain a signed acknowledgement from Watson indicating that she was aware that he lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Watson's grievance against him.

{¶ 28} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), as well as Gov.Bar R. V(4)(G).

### Count Seven

{¶ 29} Respondent agreed to represent Denise Lamberson in a bankruptcy action that was filed in October 2005. That action was dismissed for nonpayment of the filing fee, even though Lamberson had advanced the filing fee to respondent.

{¶ 30} In May 2006, Lamberson and respondent appeared at a court hearing at which the bankruptcy trustee asked for additional documents. Although Lamberson later gave the requested documents to respondent, he failed to give them to the trustee. The trustee then filed a motion to dismiss the case, and a hearing on the motion was scheduled. Respondent failed to appear at that hearing in July 2006.

{¶ 31} After the hearing, respondent did not return Lamberson's calls for nearly one month. Respondent then promised to refund Lamberson's retainer, but she never received a refund from him. In addition, respondent advised Lamberson to keep a $3,000 federal tax refund that she received, but she later learned that her bankruptcy case could not be discharged until she paid the $3,000 to the bankruptcy trustee.

{¶ 32} Also, respondent did not obtain a signed acknowledgement from Lamberson indicating that she was aware that he lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Lamberson's grievance against him.

{¶ 33} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), as well as Gov.Bar R. V(4)(G).

## Count Eight

{¶ 34} In September 2005, Kenyetta Swanson asked respondent to file a bankruptcy petition on her behalf. The following month, Swanson paid respondent $209 for the filing fee and $450 for respondent's attorney fee, and she later paid an additional $200. After October 15, 2005, respondent failed to return any of Swanson's calls, and respondent never filed a bankruptcy petition for her.

{¶ 35} Also, respondent did not obtain a signed acknowledgement from Swanson indicating that she was aware that he lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Swanson's grievance against him.

{¶ 36} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), as well as Gov.Bar R. V(4)(G).

## Count Nine

{¶ 37} In March 2005, Tenesha Matthews asked respondent to file a bankruptcy petition on her behalf, and she paid respondent $659 for court costs and his attorney fee. Respondent failed to file the petition, although he assured Matthews that he had done so.

{¶ 38} Also, respondent did not obtain a signed acknowledgment from Matthews indicating that she was aware that he lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Matthews's grievance against him.

{¶ 39} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), 7–101(A)(3), and 9–102(B)(3), as well as Gov.Bar R. V(4)(G).

## Count Ten

{¶ 40} In July 2005, Miguel Smith asked respondent to file a bankruptcy petition on his behalf, and Smith paid $600 for respondent's services and the filing fee. Respondent failed to file the bankruptcy petition until September 2006, and it was dismissed the following month because respondent had not paid the filing

fee. A show-cause hearing was scheduled in the case for October 5, 2006, but respondent failed to appear at the hearing.

{¶ 41} Also, respondent did not obtain a signed acknowledgment from Smith indicating that he was aware that respondent lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Smith's grievance against him.

{¶ 42} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3), as well as Gov.Bar R. V(4)(G).

### Count Eleven

{¶ 43} In March 2005, Luanna Lette asked respondent to file a bankruptcy petition on her behalf, and she paid $759 for respondent's attorney fee and court costs. Although respondent filed the bankruptcy petition, he failed to pay the filing fee and failed to appear at a court hearing. Respondent told Lette that she need not appear at that hearing, and he later told her that he had resolved the issue that the hearing had addressed. As a result of respondent's failure to appear and his failure to oppose a creditor's motion, however, Lette's car was repossessed.

{¶ 44} The bankruptcy court issued an order discharging Lette from bankruptcy in November 2005. Several months later, the bankruptcy trustee filed a motion to revoke the discharge order. Respondent failed to object, and Lette's case was dismissed as a result of respondent's failure to appear at a court hearing.

{¶ 45} Also, respondent did not obtain a signed acknowledgement from Lette indicating that she was aware that he lacked professional-liability insurance. Respondent did not reply to relator's inquiries about Lette's grievance against him.

{¶ 46} We agree with the board's finding that these actions by respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(2), 6–101(A)(3), 7–101(A)(2), and 7–101(A)(3), as well as Gov.Bar R. V(4)(G).

### Sanction

{¶ 47} In recommending a sanction for this misconduct, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). As aggravating factors, the board found that respondent had engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, failed to acknowledge the wrongfulness of his actions, harmed vulnerable

victims, and failed to make restitution. BCGD Proc.Reg. 10(B)(1)(c), (d), (e), (g), (h), and (i). The board cited no mitigating factors.

{¶ 48} Relator recommended that respondent be permanently disbarred. The master commissioner recommended that respondent be indefinitely suspended, but the board recommended that respondent be permanently disbarred because of his "multiple acts of dishonesty and the harm done to his clients."

{¶ 49} We agree that permanent disbarment is the appropriate sanction. Respondent's dishonesty in his law practice, his lack of cooperation in the disciplinary process, and his repeated neglect of his clients' legal matters demonstrate that he is not fit to practice law. Attorneys must comply with the ethical requirements imposed by the Code of Professional Responsibility and the Rules of Professional Conduct. Respondent has demonstrated time and again his unwillingness or inability to do so.

{¶ 50} We have imposed a sanction of permanent disbarment in similar cases. See, e.g., *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16 (explaining that the presumptive sanction is disbarment for those attorneys who accept retainers and then fail to carry out contracts of employment); *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (an attorney's "persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings" compel his disbarment); *Greene Cty. Bar Assn. v. Fodal,* 100 Ohio St.3d 310, 2003-Ohio-5852, 798 N.E.2d 1082 ¶ 32 (ordering the disbarment of an attorney who "routinely took his clients' money and provided nothing in return").

{¶ 51} Accordingly, respondent is hereby permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

———

Becker & Mishkind Co., L.P.A., and Howard D. Mishkind; Stephen R. Lazarus; and McFadden & Associates Co., L.P.A., and Donald McFadden, for relator.