DISCIPLINARY COUNSEL *v.* LENTES.

[Cite as *Disciplinary Counsel v. Lentes,*
120 Ohio St.3d 431, 2008-Ohio-6355.]

(No. 2008–1709—Submitted November 18, 2008—Decided December 11, 2008.)

**Per Curiam.**

{¶ 1} Respondent, John Robert Lentes of Gallipolis, Ohio, Attorney Registration No. 0029906, was admitted to the practice of law in Ohio in 1985. The Board of Commissioners on Grievances and Discipline recommends that we permanently disbar respondent, based on findings that he systematically deceived clients through lies about fictitious complaints, hearings, and other legal proceedings, in one case even fabricating a judgment entry, and also disregarded efforts to investigate this misconduct. We find that respondent committed these unconscionable acts, that he thereby flagrantly violated standards of professional ethics, and that his disbarment is warranted.

{¶ 2} Relator, Disciplinary Counsel, charged respondent in a six-count complaint with violations of Gov.Bar R. V(4)(G) (requiring cooperation in a disciplinary investigation), the Disciplinary Rules of the Code of Professional Responsibility, and the Rules of Professional Conduct.[1] Respondent was served with notice

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the

of the complaint but did not answer, and relator moved for default. See Gov.Bar R. V(6)(F). A master commissioner appointed by the board granted the motion, making findings of fact, conclusions of law, and a recommendation for permanent disbarment. The board adopted the master commissioner's findings of misconduct and recommendation to disbar.

{¶ 3} In objecting to the board's report, respondent attempted to argue factors in mitigation of his misconduct. The objections are overruled.

{¶ 4} We have previously rejected a respondent's attempt to introduce evidence in the first instance in the respondent's objections to the board's report and during oral argument to show cause why we should not adopt the board's report. *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St.3d 164, 672 N.E.2d 633. In *Sterner*, we held that Gov.Bar R. V, which sets forth procedure in the disciplinary process and affords the opportunity for a formal evidentiary hearing before a panel of the board, "has no provision for the introduction of evidence in the brief filed in this court or in the oral argument to this court" and that "[o]nly in the most exceptional circumstances would we accept additional evidence at that late stage of the proceedings." Id. at 167–168, 672 N.E.2d 633. Accord *Columbus Bar Assn. v. Finneran* (1997), 80 Ohio St.3d 428, 687 N.E.2d 405. No exceptional circumstances are present in this case.

{¶ 5} In addition to arguing mitigation during oral argument, respondent asked for the opportunity to submit a resignation from the practice of law within 90 days. At this late stage of the proceedings, respondent has forfeited that opportunity.

{¶ 6} Gov.Bar R. VI(6)(C) permits lawyers who are the subject of disciplinary proceedings to resign from the practice of law with the designation "resigned with disciplinary action pending." This rule does not exist to allow lawyers to exhaust the participants and procedures of the disciplinary system in hope of ultimately evading the recommended sanction. Lawyers resorting to resignation during disciplinary proceedings should therefore resign at the beginning of the proceedings. This immediately removes the lawyer from the practice of law, thereby protecting the public and sparing the disciplinary process the time and expense of the proceedings. Rarely will this court accept a resignation tendered at the end of the proceedings, when the benefit to the public and the disciplinary process no longer remains. See *Akron Bar Assn. v. Holder*, 112 Ohio St.3d 90, 2006-Ohio-6506, 858 N.E.2d 356.

Code of Professional Responsibility. In specifying both the former and current rules for the same acts, the allegations comprise a single ethical violation. *Disciplinary Counsel v. Freeman,* 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, fn. 1.

## Misconduct

{¶ 7} Respondent violated ethical standards while purporting to represent clients in three separate legal actions and in then failing to respond during the investigation of the ensuing grievances.

### *Count I—The Garretson Grievance*

{¶ 8} Greg Garretson retained respondent in November 2004 to represent him in a dispute with a Harley Davidson dealership over repairs on a motorcycle. Respondent promised to file a lawsuit, advising Garretson that he would recover his legal fees through the litigation. Respondent had no success negotiating informally to resolve the dispute with the dealership but never filed suit. He instead misled Garretson, falsely telling his client on a number of occasions that he had filed a complaint against the dealership in the Gallia County Court of Common Pleas.

{¶ 9} In fact, respondent did little but lie to Garretson. In mid-March 2006, respondent had Garretson meet him for a fictitious hearing at the common pleas court. He kept Garretson waiting outside the courtroom and then told his client that he needed to hire a mechanic as an expert, which was not true. Garretson, acting on respondent's false representation, hired an expert, who examined the motorcycle at the dealership, and Garretson gave the expert's report to respondent, all for nothing.

{¶ 10} Respondent then continued the ruse. He met with Garretson in June, August, and November 2006, feigning during each conference that proceedings were ongoing in Garretson's court case. In early January 2007, respondent met with Garretson specifically to prepare him for a trial that respondent falsely said had been scheduled for January 8, 2007. On the supposed trial date, respondent again had Garretson come to court and wait outside while the common pleas judge supposedly conducted proceedings. When respondent returned, he falsely told Garretson that representatives for the dealership had not appeared and that the judge would soon enter judgment in Garretson's favor.

{¶ 11} During another meeting in early March 2007, respondent falsely told Garretson that he had sent a letter on the court's behalf to the dealership, directing the dealership to deliver the motorcycle to respondent's office within 30 days. When the deadline expired, respondent called Garretson and made up a reason to explain why the delivery would not occur. Garretson then offered to accept the value of the motorcycle in place of delivery. In response, respondent falsely represented that he would arrange with the judge for Garretson to receive a check within one week.

{¶ 12} Within that week, respondent presented Garretson with a judgment entry purporting to be a ruling in Garretson's favor. Respondent fabricated the

entry and forged the signature of Gallia County Common Pleas Court Judge D. Dean Evans. Garretson learned of the fabrication and forgery in early May 2007, when he checked with the common pleas court and was told that respondent had never filed any complaint on his behalf.

{¶ 13} Clear and convincing evidence shows that from March 2006 to May 2007, respondent deceived Garretson as to the status of his case, including the fabrication and forgery of a court order. Respondent thereby violated (1) Prof.Cond.R. 8.4(c) and its predecessor, DR 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); (2) Prof.Cond.R. 8.4(d) and its predecessor, DR 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice); and (3) Prof.Cond.R. 8.4(h) and its predecessor, DR 1–102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law). Through his failure to represent Garretson with any semblance of professional competence and diligence, respondent also violated (1) Prof.Cond.R. 1.1 (a lawyer shall provide competent representation to a client, meaning that the lawyer must apply the knowledge, skill, thoroughness, and preparation reasonably necessary for the representation) and (2) Prof.Cond.R. 1.3 (a lawyer shall act with reasonable diligence in representing a client) and its predecessor DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter).

### Count II—Investigation of the Garretson Grievance

{¶ 14} Upon learning that respondent had forged his signature, Judge Evans filed a grievance against him. Relator sent certified letters of inquiry concerning the Garretson grievance to respondent at the address of his law office in May and June 2007. Respondent's secretary signed the certified receipts and reported the delivery of the letters to respondent, but he did not reply. Later that June, relator subpoenaed respondent to appear for his deposition on August 7, 2007. Respondent canceled on the day of the deposition. Respondent later appeared for his deposition on September 20, 2007, and at that time admitted under oath to virtually all the misconduct alleged in the Garretson grievance.

{¶ 15} Clear and convincing evidence shows that respondent paid no attention to relator's letters of inquiry and waited until the last minute to cancel a deposition that relator had scheduled, even though he had been given reasonable notice. Respondent thereby violated Gov.Bar R. V(4)(G). His dismissive reaction toward the disciplinary system also reflected adversely on his fitness to practice law, constituting a violation of Prof.Cond.R. 8.4(h).

### Count III—The Searles Grievance

{¶ 16} Jerry and Wanda Searles retained respondent in September 2005 to file an action in the Meigs County Probate Court for the adoption of their teenage grandson, paying $500 in legal fees and $250 for court costs. In November 2005,

respondent's secretary advised the Searleses that respondent had filed the adoption petition. Respondent did not actually file the adoption petition until August 1, 2006.

{¶ 17} In January 2006, Wanda Searles began calling respondent's office to obtain an update on the status of the adoption. She left numerous messages, but respondent did not return her calls. When they still had no news by May 2006, the Searleses went to respondent's office in an unscheduled visit. Respondent was not in the office at the time, and the Searleses decided to wait for his return. When he returned several hours later, respondent met with the couple and falsely reported that the probate court had scheduled a hearing on their adoption petition for May 19, 2006.

{¶ 18} The Searleses appeared on the appointed date in probate court. Respondent did not. The Searleses learned from court personnel that the hearing had not been scheduled.

{¶ 19} After this experience, Wanda Searles started calling respondent again, this time leaving messages asking him to return the couple's $500 so that they could hire another lawyer. Respondent did not reply or honor this request. Respondent instead remained on the case, finally filing the adoption petition and then having the probate court schedule a hearing in the case for early December 2006. That hearing was canceled; another hearing scheduled in August 2007 did not go forward because respondent failed to serve the grandson's biological mother with notice of the proceedings, even after the Searles had provided the address of the mother to respondent.

{¶ 20} The Searleses attended the August 2007 hearing and were led by respondent to believe that the adoption was progressing and almost complete. In February of that year, however, the Searleses had filed a grievance against respondent for his inaction up until that time, and after the August hearing, respondent mailed a check to the Searleses for a refund of legal fees. The check was dishonored, and the Searleses were assessed $203 in overdraft charges. Respondent's check for unexpended court costs was also dishonored, costing the Searleses $32 more in bank fees.

{¶ 21} Respondent has not reimbursed the Searleses for the cost of his dishonored checks. The Searleses, who had hoped that their grandson would be able to draw social security benefits on their claim to put toward his college tuition, were never able to complete the adoption. The grandson has since turned 18.

{¶ 22} Clear and convincing evidence shows that from November 2005 to August 2007, respondent failed to represent the Searleses with professional competence and diligence and also misled them about the pendency of their adoption case. Respondent thereby violated (1) Prof.Cond.R. 1.1; (2) Prof.

Cond.R. 1.3 and its predecessor, DR 6–101(A)(3); (3) Prof.Cond.R. 8.4(c) and its predecessor, DR 1–102(A)(4); (4) Prof.Cond.R. 8.4(d) and its predecessor, DR 1–102(A)(5); and (5) Prof.Cond.R. 8.4(h) and its predecessor, DR 1–102(A)(6).

### Count IV—Investigation of the Searles Grievance

{¶ 23} Relator sent respondent two certified letters of inquiry concerning the Searles grievance, one in April and another in May 2007. Respondent did not claim the first certified letter, and relator's investigator later spoke with respondent and sent a copy to him by facsimile. Respondent's secretary signed for the second letter. Respondent did not reply to any of relator's communications.

{¶ 24} In June 2007, relator subpoenaed respondent for a deposition to answer questions on August 7, 2007, about both the Garretson and Searles grievances. As already recounted, respondent canceled on the day of the deposition. In his request to reschedule the deposition, respondent promised to provide a written response to the grievances, including an explanation why he had delayed filing the Searleses' adoption petition. Respondent never did provide his written response, even after relator sent a letter renewing the request for this information.

{¶ 25} Again, clear and convincing evidence shows that respondent paid no attention to relator's letters of inquiry and waited until the last minute to cancel the deposition that relator had scheduled. Respondent also failed to abide by his promise to explain his delay in filing the Searleses' adoption petition. Respondent thereby violated Gov.Bar R. V(4)(G). His cavalier reaction toward the disciplinary system also reflected adversely on his fitness to practice law, constituting a violation of Prof.Cond.R. 8.4(h).

### Count V—The Marcum Grievance

{¶ 26} Ida Marcum hired respondent in October 2006 to obtain a court order allowing an easement to her land through an adjacent landowner's property. Marcum paid respondent $500 in legal fees, and he agreed to file a lawsuit on her behalf. Respondent told Marcum that he had filed her lawsuit in the Gallia County Court of Common Pleas. He never did.

{¶ 27} Respondent then misled Marcum through yet another series of untruths. In the fall of 2007, he accompanied Marcum to Judge Evans's courtroom for yet another hearing that had never been scheduled. Again, respondent had his client wait outside the courtroom while he supposedly attended the hearing. When respondent returned, he falsely reported to Marcum that the hearing had been continued because the defendant needed to obtain new counsel.

{¶ 28} Respondent instructed his client to be present for two more fictional hearings in January and February 2008. Respondent had Marcum wait outside

the courtroom during the first "hearing" and then falsely advised her that Judge Evans had decided to grant her access to her property through an easement across the property of the adjacent landowner. In anticipation of the second "hearing," respondent falsely advised Marcum that the judge would determine whether to require the adjacent landowner to tear down a garage located partially on Marcum's property.

{¶ 29} When Marcum appeared for the fictitious February hearing, she learned that the court was closed because of a funeral. Before leaving the courthouse, Marcum spoke with a court employee who advised her that no one had filed an action on her behalf and thus no hearing had been scheduled in the case for that day. Respondent later falsely told Marcum that the hearing had not gone forward because the defendant had filed an appeal.

{¶ 30} Clear and convincing evidence shows that from October 2006 to February 2008, respondent failed to represent Marcum with professional competence and diligence and also misled her repeatedly about the pendency of her case. Respondent thereby violated (1) Prof.Cond.R. 1.1; (2) Prof.Cond.R. 1.3 and its predecessor, DR 6–101(A)(3); (3) Prof.Cond.R. 8.4(c) and its predecessor, DR 1–102(A)(4); (4) Prof.Cond.R. 8.4(d) and its predecessor, DR 1–102(A)(5); and (5) Prof.Cond.R. 8.4(h) and its predecessor, DR 1–102(A)(6).

### Count VI—Investigation of the Marcum Grievance

{¶ 31} In February 2008, relator personally served respondent at his law office with a letter of inquiry regarding the Marcum grievance. Respondent did not respond. In March 2008, relator sent a second letter of inquiry by certified mail. Respondent's secretary signed the return receipt, but respondent again did not reply.

{¶ 32} Clear and convincing evidence again shows that respondent paid no attention to relator's letters of inquiry. Respondent thereby violated Gov.Bar R. V(4)(G). His cavalier reaction toward the disciplinary system also reflected adversely on his fitness to practice law, constituting a violation of Prof.Cond.R. 8.4(h).

### Sanction

{¶ 33} Disbarment is the only appropriate sanction for respondent's multiple acts of dishonesty and his callous disregard of responsibility to his clients, the judicial system, and the legal profession. Our admonishment in *Cuyahoga Cty. Bar Assn. v. Smith,* 115 Ohio St.3d 95, 2007-Ohio-4270, 873 N.E.2d 1224, in which we disbarred another lawyer for similar manifest ethical misconduct, applies with equal force here:

{¶ 34} "Respondent's dishonesty in his law practice, his lack of cooperation in the disciplinary process, and his repeated neglect of his clients' legal matters demonstrate that he is not fit to practice law. Attorneys must comply with the ethical requirements imposed by the Code of Professional Responsibility and the Rules of Professional Conduct. Respondent has demonstrated time and again his unwillingness or inability to do so." Id. at ¶ 49.

{¶ 35} We therefore permanently disbar respondent from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

PFEIFER, J., dissents.

---

PFEIFER, J., dissenting.

{¶ 36} John Lentes has offered to resign from the bar of Ohio. I would accept his resignation. In the alternative, the proper sanction in this case is an indefinite suspension, as was recommended by the Disciplinary Counsel. I dissent.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

John R. Lentes, pro se.