WARREN COUNTY BAR ASSOCIATION v. MARSHALL.

[Cite as *Warren Cty. Bar Assn. v. Marshall,*
121 Ohio St.3d 197, 2009-Ohio-501.]

(No. 2008–1737—Submitted October 14, 2008—Decided February 12, 2009.)

―――――――

**Per Curiam.**

{¶ 1} Respondent, Bernard Sanford Marshall Jr. of Lebanon, Ohio, Attorney Registration No. 0067838, was admitted to the practice of law in Ohio in 1997. The Board of Commissioners on Grievances and Discipline recommends that this court permanently disbar respondent, based on findings that he neglected legal matters entrusted to him in violation of DR 6–101(A)(3), intentionally failed to carry out a contract of employment entered into with a client for legal services in violation of DR 7–101(A)(2), and knowingly failed to respond to a demand for information from a disciplinary authority in violation of Rule 8.1(b) of the Rules of Professional Conduct. We agree that respondent violated the Code of Professional Responsibility and the Rules of Professional Conduct as found by the board, and we further agree that permanent disbarment is the appropriate sanction for his misconduct.

{¶ 2} Relator, Warren County Bar Association, charged respondent with numerous counts of misconduct under the Code of Professional Responsibility (effective through January 2007) and the Rules of Professional Conduct (effective February 1, 2007). In response, respondent denied the allegations, and a hearing was held before a panel of the board. The following evidence was adduced.

## Misconduct

### Smith Grievance

{¶ 3} Respondent entered into a written agreement to represent Jeremy and Janelle Smith in connection with a filing for bankruptcy protection. The Smiths paid respondent a retainer of $750 and $300 in filing fees, and they provided respondent with the paperwork required for filing the bankruptcy petition. Respondent did not promptly file their petition with the bankruptcy court, and when he did, it failed to conform to the filing requirements. The bankruptcy court issued an order and notice regarding deficient filing, to which respondent failed to respond, and the bankruptcy court therefore dismissed the Smiths' petition.

{¶ 4} Respondent did not notify the Smiths of the dismissal of their petition, nor did he respond to their repeated calls inquiring about the status of their case. Nor did respondent return any of the retainer. The Smiths filed a grievance against respondent with the Warren County Bar Association's certified grievance committee, and the committee sent respondent a copy of the grievance and twice requested his response; however, respondent never responded to the grievance committee.

### Binkley Grievance

{¶ 5} Respondent represented Shaunda Neal in a child-custody dispute through the Legal Aid Society, and Neal's fiancé, J. Robert Binkley, retained respondent

to represent her in some criminal matters also. Binkley paid respondent two retainers: one of $500 and one of $300. Respondent then agreed to represent Neal in a renewed child-custody dispute with the child's grandmother and was paid $900 for these services, but Neal died with this action still pending.

{¶ 6} In addition, Binkley hired respondent to represent Neal in possible civil and criminal actions regarding bad checks that Neal had written, and paid respondent $3,000. However, after Neal filed for bankruptcy protection, the attorney representing her in the bankruptcy discovered that respondent had done nothing to settle with the creditors to whom Neal had passed the bad checks.

{¶ 7} Binkley and Neal repeatedly attempted to contact respondent to inquire about the status of the representation, but respondent never responded to their calls. After Neal's death, Binkley retained attorney Ted Gudorf to obtain an accounting from respondent of the fees paid for legal work undertaken but not performed. Respondent did not respond to Gudorf's attempts to contact him until Gudorf called an attorney in respondent's office. Even then, respondent did not provide the requested accounting.

{¶ 8} Binkley then filed a grievance against respondent with the Warren County Bar Association's certified grievance committee, and that committee sent respondent a copy of the grievance and requested his response. However, respondent never responded to the grievance committee.

### Failure to Cooperate

{¶ 9} At a prehearing telephone conference with the hearing panel chair, the parties agreed to the time and place for conducting the evidentiary hearing. Also, the panel chair by order set a schedule for discovery and the service of requests for admissions. Respondent never responded to relator's requests for admissions, and without objection, the panel chair deemed relator's requests for admissions admitted.

{¶ 10} The panel chair conducted a second prehearing telephone conference. Despite the panel chair's order and notice, respondent never appeared.

{¶ 11} Finally, respondent did not appear at the evidentiary hearing. After recessing in order to wait for respondent, the panel conducted the evidentiary hearing in his absence.

### The Panel and the Board's Recommendation

{¶ 12} Regarding the Smiths' and Binkley's grievances, the panel concluded that respondent had violated DR 6–101(A)(3) and 7–101(A)(2).

{¶ 13} The panel also concluded that respondent violated Prof.Cond.R. 8.1(b) in two separate counts by his failure to respond to relator's letters regarding

Binkley's grievance and by failing to respond to relator's demands for discovery regarding the allegations raised in the Smiths' and Binkley's grievances.

{¶ 14} The panel found that there were no mitigating factors. As aggravating factors, the panel found that respondent had two prior disciplinary violations resulting in separate two-year suspensions from the practice of law. See *Warren Cty. Bar Assn. v. Marshall*, 105 Ohio St.3d 59, 2004-Ohio-7011, 822 N.E.2d 355 (two-year stayed suspension), and *Warren Cty. Bar Assn. v. Marshall*, 113 Ohio St.3d 54, 2007-Ohio-980, 862 N.E.2d 519 (two-year suspension). Respondent's repeated violations therefore demonstrate a pattern of misconduct. The panel concluded that respondent's failure to do the work he had promised to do, his deceiving of clients regarding the status of that work, and his failure to return unearned fees upon demand represent dishonest conduct. In addition, the panel found that respondent failed to cooperate in the disciplinary process.

{¶ 15} Citing *Cuyahoga Cty. Bar Assn. v. Smith*, 115 Ohio St.3d 95, 2007-Ohio-4270, 873 N.E.2d 1224, a case involving a similar factual situation, the panel recommended that respondent be disbarred. The board adopted the panel's findings of fact, conclusions of law, and the recommendation of disbarment. Respondent has not responded to this court's order to show cause why the recommendation of the board should not be accepted.

{¶ 16} We accept the board's findings that respondent neglected legal matters entrusted to him in violation of DR 6–101(A)(3), intentionally failed to carry out contracts of employment in violation of DR 7–101(A)(2), and knowingly failed to respond to a demand for information from a disciplinary authority in violation of Prof.Cond.R. 8.1(b).

## Sanction

{¶ 17} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, at ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, at ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction should be imposed. BCGD Proc.Reg. 10(B).

{¶ 18} We accept the board's finding that there are no mitigating factors. Regarding aggravating factors, we accept the board's finding that respondent had

prior disciplinary violations resulting in suspensions, that he had engaged in a pattern of misconduct, that he had engaged in dishonest conduct, and that he failed to cooperate with the disciplinary process.

{¶ 19} The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law. *Disciplinary Counsel v. Agopian,* 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, at ¶ 10. In this case, permanent disbarment from the practice of law is appropriate. Respondent's repeated neglect of his clients' legal matters, his acceptance of a retainer while failing to carry out the representation, his prior disciplinary violations resulting in suspensions from the practice of law, his dishonesty, his engagement in a pattern of misconduct, and his failure to cooperate in the disciplinary process demonstrate that he is no longer fit to practice law.

{¶ 20} As relator notes, we have imposed the sanction of permanent disbarment in similar cases. See, e.g., *Cuyahoga Cty. Bar Assn. v. Smith,* 115 Ohio St.3d 95, 2007-Ohio-4270, 873 N.E.2d 1224, at ¶ 49 ("Respondent's dishonesty in his law practice, his lack of cooperation in the disciplinary process, and his repeated neglect of his clients' legal matters demonstrate that he is not fit to practice law"); *Columbus Bar Assn. v. Moushey,* 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, at ¶ 16 (explaining that the presumptive sanction is disbarment for those attorneys who accept retainers and then fail to carry out contracts of employment); *Cincinnati Bar Assn. v. Weaver,* 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, at ¶ 15 ("respondent's persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings warrant his disbarment"); *Greene Cty. Bar Assn. v. Fodal,* 100 Ohio St.3d 310, 2003-Ohio-5852, 798 N.E.2d 1082, at ¶ 32 ("Respondent routinely took his clients' money and provided nothing in return. In the absence of any compelling mitigating evidence, the sanction for this misconduct and his disregard of the disciplinary process is disbarment").

{¶ 21} Based on respondent's conduct and our precedent, respondent is hereby permanently disbarred from the practice of law in the state of Ohio.

{¶ 22} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

John S. Mengle and Yvonne A. Iverson, for relator.