**DISCIPLINARY COUNSEL *v*. NICKS.**

**[Cite as *Disciplinary Counsel v. Nicks*, 124 Ohio St.3d 460, 2010-Ohio-600.]**

*Attorneys at law — Misconduct — Multiple disciplinary violations — Chemical dependence — Two-year suspension, partially stayed on conditions.*

(No. 2009-1544 — Submitted November 4, 2009 — Decided February 25, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-016.

_____

**Per Curiam.**

{¶ 1} Respondent, J. Michael Nicks of Galena, Ohio, Attorney Registration No. 0073608, was admitted to the practice of law in Ohio in 2001. Relator, Disciplinary Counsel, and respondent stipulated to the facts and misconduct alleged in relator's complaint. A three-member panel of the Board of Commissioners on Grievances and Discipline also heard testimony on the cause, issued findings of fact and conclusions of law, and made a recommendation. The board adopted the panel's findings and also adopted the panel's recommendation that we suspend respondent's license to practice law for two years, staying the last 18 months on conditions.

{¶ 2} The parties have not objected to the board report; we ordered respondent to show cause why we should not adopt the board's recommendation. On review, we find that respondent committed the cited violations of the Rules of Professional Conduct and that the recommended sanction is appropriate.

### Misconduct

*Count I – The Seibel Matter*

{¶ 3} In November 2006, Larry Seibel hired respondent to represent him in the administration of his mother's, Dorothy Seibel's, estate. Respondent and Seibel entered into a fee agreement by which respondent would receive three

percent of the value of the Seibel estate. The agreement also required probate court approval prior to the payment of any attorney fees.

{¶ 4} In February 2007, respondent asked Seibel for a check for one half of respondent's attorney fees, and Seibel provided respondent with a check for $7,428.32. Respondent immediately cashed the check without obtaining the required approval from the probate court and later filed an application for payment of attorney fees, asking the court to approve the full amount that he had already been paid, $7,428.32. The court issued an order, but declined to approve the full amount and ordered that respondent be paid only $5,000. After learning that the court had approved only $5,000 of the $7,400 fee request, respondent did not inform Seibel, nor did he make a refund to the estate.

{¶ 5} Respondent met with Seibel again on June 17, 2007, to resolve the estate tax return. Seibel signed the estate tax return and gave respondent a check for the payment of the estate taxes, but respondent did not file the estate tax return, nor did he forward the check for payment of the estate taxes. As a result, the estate was assessed a $2,834.75 late-payment penalty and $657.04 in interest charges.

{¶ 6} At the same June 2007 meeting, respondent asked Seibel for a second advance on his attorney fees, and Seibel gave him a check for $3,714.16. Again, respondent did not file with the probate court the required application for approval of the payment of those attorney fees prior to accepting them. Instead, he immediately endorsed and cashed the check.

{¶ 7} During respondent's representation of Seibel, there were several times when he failed to return Seibel's phone calls. In addition, the probate court issued two reminders for respondent to file an accounting on the estate. After the probate court issued a notice of past-due account to both respondent and Seibel on December 13, 2007, respondent met with Seibel to discuss the matter. At the time of this meeting, respondent's law license had been suspended for failure to

comply with attorney-registration requirements for the 2007-2009 biennium, but respondent did not inform Seibel of the suspension.[1] Rather, respondent advised Seibel on how to obtain an extension of time to file his overdue account. Respondent admitted that as of the date of the hearing before the panel, he had not repaid to the estate the fees taken without probate court approval or the interest and late-payment penalty that had been charged to the estate.

{¶ 8} Respondent stipulated and the board concluded that respondent's conduct in Count I violated the following Rules of Professional Conduct: 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal), 8.4(c) (a lawyer shall not engage in conduct involving fraud, deceit, dishonesty, or misrepresentation), 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects upon fitness to practice law).

{¶ 9} Although respondent stipulated that his conduct also violated Prof.Cond.R. 1.1 (a lawyer shall provide competent representation to a client), the board concluded that respondent's conduct did not violate that rule. The board noted, " 'Prof.Cond.R. 1.1 requires a lawyer to "provide competent representation to a client." "Competent representation" under the rule requires "the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation," ' " quoting *Cincinnati Bar Assn. v. Lawson,* 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 46. The board also noted that this court has also stated that "competent representation" means that "the lawyer must *apply* the knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." (Emphasis added.) *Disciplinary Counsel v. Lentes*, 120 Ohio St.3d 431, 2008-Ohio-6355, 900 N.E.2d 167, ¶ 13.

---

1. Respondent was suspended on December 3, 2007, and his law license was reinstated on April 29, 2008.

**{¶ 10}** The board concluded that Prof.Cond.R. 1.1 focuses on whether a lawyer is competently prepared to handle a legal matter and found that respondent possessed the requisite experience to be regarded as competent to handle probate matters. Moreover, the board concluded that there was no evidence that any of the work completed by respondent in the Seibel estate was not prepared in accordance with applicable legal standards. We agree and accept these findings regarding misconduct.

*Count II – The Graham Matter*

**{¶ 11}** In July 2006, Donald Graham hired respondent to represent him in the administration of his wife's estate and paid him a $500 fee. On January 13, 2008, the probate court issued a citation requesting that respondent file a report of distribution and evidence of the recording of a certificate of transfer. The court scheduled a status conference on February 20, 2008, to address the issue, but respondent failed to respond to the court's citation and failed to appear at the status conference. As a result, the court scheduled a show-cause hearing in March 2008, at which he failed to appear. The probate court issued an order in March 2008 finding respondent in contempt. In January 2009, respondent filed a motion to reopen the estate, and the probate court approved the filing of the report of distribution and found that respondent's actions cured the contempt.

**{¶ 12}** Respondent stipulated and the board concluded that respondent's conduct in Count II violated Prof.Cond.R. 1.3, 8.4(d), and 8.4(h).

**{¶ 13}** Again, although respondent stipulated that the conduct also violated Prof.Cond.R. 1.1, the board concluded that respondent's conduct did not violate the rule. The board stated that it was unable to conclude by clear and convincing evidence that respondent violated Prof.Cond.R. 1.1 simply by his failure to timely file the required report of distribution. We agree and accept these findings regarding misconduct.

**Sanction**

4

{¶ 14} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Lake Cty. Bar Assn. v. Troy,* 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

{¶ 15} We have identified respondent's breaches of duties owed to his clients, the legal profession, and the judicial system. In respondent's case, the board found two aggravating factors. The board found that respondent's misconduct involved multiple offenses, BCGD Proc.Reg. 10(B)(1)(d), and that respondent failed to make restitution, 10(B)(1)(i).

{¶ 16} The board found three mitigating factors. First, the board found that respondent has no prior disciplinary record, BCGD Proc.Reg. 10(B)(2)(a). Second, the board found that respondent cooperated fully in the disciplinary process, BCGD Proc.Reg. 10(B)(2)(d). Finally, the board found that respondent's chemical dependence was a mitigating factor, BCGD Proc.Reg. 10(B)(2)(g), because the evidence supported the following requisites of that rule: (1) a diagnosis of a chemical dependence by a qualified health-care professional or alcohol/substance-abuse counselor, (2) a determination that the chemical dependence contributed to cause the misconduct, (3) a certification of successful ongoing compliance with an approved treatment program, and (4) a prognosis from a qualified alcohol/substance-abuse counselor that respondent will be able to return to competent, ethical professional practice under specified conditions. The board further found that respondent fully acknowledged the wrongful nature of

his conduct and fully accepted responsibility for the consequences of his misconduct.

{¶ 17} As for respondent's chemical dependence, the parties stipulated that respondent was diagnosed as suffering from chemical dependence based on his addiction to marijuana, alcohol, and cocaine. Respondent had completed a partial hospitalization program and an intensive outpatient chemical-dependence program. Respondent had also entered into a five-year contract with the Ohio Lawyers Assistance Program ("OLAP"). Respondent is in compliance with his contract and currently in treatment with psychologist John A. Tarpey, Ph.D. Moreover, respondent entered a one-year aftercare program.

{¶ 18} Respondent had a relapse in December 2008, but had maintained a sustained, uninterrupted period of sobriety from December 12, 2008, to at least the time of the stipulations. Dr. Tarpey and Carolyn Sellers, a licensed social worker and chemical-dependence counselor, stated that respondent's chemical dependence contributed to the cause of his misconduct, that respondent's prognosis was positive, and that he could return to the competent, ethical practice of law so long as he continued his treatment, complied with his OLAP contract, and maintained his sobriety. In addition, Stephanie Krznarich, a licensed social worker with OLAP, testified in mitigation that respondent's compliance was "going very, very well." She also testified that in her opinion, respondent's chemical dependence contributed to cause his misconduct. She also testified that with continued treatment, medications, and monitoring, he should be able to successfully return to the practice of law.

{¶ 19} The board adopted the stipulated sanction that respondent's license to practice law be suspended for 24 months with the last 18 months stayed on the following conditions: (1) that respondent remain in compliance with his five-year OLAP contract, (2) that respondent pay $9,634.27 in restitution to the Seibel estate or the beneficiaries thereof, as ordered by the Probate Court of Licking

County, (3) that respondent's practice be monitored in accordance with Gov.Bar R. V(9) by an attorney designated by relator for the period of respondent's stayed suspension, (4) that respondent not engage in any further misconduct during the entire 24-month suspension, and (5) that respondent pay the costs of the prosecution of this action.

### Review

{¶ 20} Regarding sanctions in similar cases, we find *Disciplinary Counsel v. Greco*, 107 Ohio St.3d 155, 2005-Ohio-6045, 837 N.E.2d 369, to be instructive. In that case, the attorney neglected clients, deceived clients, and was slow to refund unearned retainers. Greco experienced similar chemical dependence and also successfully completed treatment programs and cooperated with the disciplinary process. We suspended the lawyer's license for two years but stayed 18 months of the suspension on the condition that the lawyer receive assistance in his recovery from chemical dependence.

{¶ 21} Accordingly, we accept the board's recommendation. Respondent is therefore suspended from the practice of law in Ohio for two years, with 18 months of the suspension stayed on the conditions listed above. If respondent fails to comply with the terms of the stay, the stay will be lifted, and respondent will serve the entire two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

J. Michael Nicks, pro se.

_____